June, 1809.

M'CALL
v.
M'CALL.

---

DEBORAH M'CALL, HOBART M'CALL, GREEN M'CALL,
   JOSIAH M'CALL, JABEZ M'CALL, LEVI COE and
   DEBBY his wife, JOSEPH BABCOCK and MOLLY his
   wife, and ELIPHALET MURDOCK and ANN his wife,
   *against* ABIGAIL M'CALL.

If a person,
intending to
make a family
settlement of
his estate, in
nature of a
testamentary
disposition,
conveys lands
to his sons, by
several deeds,
and the deed
to one proves
defective,
chancery, af-
ter the death
of the grantor,
will compel
his heirs and
widow to per-
fect the title
of the grantee.

WRIT of error.

This was a petition in chancery, to the superior court,
brought by *Abigail M'Call*, against *Deborah M'Call* and
others.

The material facts stated, that were found by the
court were: That *Archippus M'Call*, on the 22d of
*September*, 1784, designing to *settle* and *estate* his sons,
*Hobart, Ozias, Green, Roger,* and *Walter,* did, by several
deeds, duly signed, acknowledged, &c. convey farms of
land to each of them, with covenants of seisin and war-
ranty, and to *Jabez* and *Josiah,* the heirs of his son *Jacob,*
deceased, he gave an equal share in money and securi-
ties. By the deed to *Roger,* he granted half the farm

on which he lived, and some other lands in *Goshen* parish; and by the deed to *Walter*, he granted a farm in *Exeter* parish, both in the town of *Lebanon*. These deeds to *Roger* and *Walter*, the grantor retained in his own hands, for further consideration; but delivered to *Hobart*, *Ozias* and *Green*, the deeds made for them, and to *Jabez* and *Josiah* the moneys and securities designed for them; and each of them has ever since possessed and enjoyed the same. Before any delivery of the deeds to *Roger*, and *Walter*, the father concluded to give the lands granted to *Walter*, to his son *Roger*, and the lands given his son *Roger*, to *Walter;* and to effect the same, caused the name of *Walter* to be erased from the deed conveying the *Exeter* farm, and the name of *Roger* to be substituted; and the name of *Roger* to be erased from the deed conveying the *Goshen* lands, and the name of *Walter* to be substituted, without the knowledge of *Walter*. He then delivered the deeds thus altered, and erased, without signing or acknowledging them again, to *Roger* and *Walter*, verily believing, and until his death continuing to believe, that he had thereby conveyed the *Exeter* farm to *Roger*, and the *Goshen* farm to *Walter*. *Roger*, under his deed, took and ever since has kept possession of the *Exeter* farm; and *Walter*, under his deed, took possession of the *Goshen* lands, and occupied them until his father *Archippus* died, on the 30th of *November*, 1798, and continued in the occupation in the same manner until the 20th of *October*, 1802, when he himself died. Before his death, in *October*, 1792, *Walter* caused his deed to be duly recorded; and while in possession of the lands under his altered deed, he expended in repairs one hundred dollars. On the 12th of *June*, 1800, *Walter* having no real estate, except what was derived from the aforesaid conveyance, made his will, and devised all his estate *real* and personal, except a lot of ten acres, to the petitioner, his wife, and made her executrix, giving legacies to the amount of more than 1,000 dollars.

On the 17th of *January*, 1787, *Archippus*, the father, made his will, which contained the following clause: " *Item*, I give to my son *Walter*, the one half of this lot I now live on, with the buildings thereunto belonging; *the other half I have given him* by deed heretofore." Which will was destroyed during the life of *Archippus*, who left estate to be distributed as intestate estate to the value of 3,650 dollars.

The deed so altered and delivered to *Walter*, has been, by the superior court, adjudged to be no evidence at law, of a title in *Walter*, to the lands supposed to have been conveyed thereby. And *Hobart M'Call, Ozias M'Call, Green M'Call, Roger M'Call, Ann*, the wife of *Eliphalet Murdock, Molly*, the wife of *Joseph Babcock, Debby*, the wife of *Levi Coe*, and *Jabez M'Call*, and *Josiah M'Call*, the sons of *Jacob*, deceased, are the heirs of *Archippus;* who also left a widow *Deborah*, who is still living. And the heirs, by release deeds of their right, have quieted *Roger* in the possession of the *Exeter* farm, conveyed to him by the altered deed, but refuse to quiet the devisee of *Walter*, in the possession of the *Goshen* lands, conveyed as aforesaid by the other erased deed.

From the decree it also appeared, that the court found that *Archippus*, before his death, gave to his daughters, respondents, portions of his estate.

And that the court admitted parol evidence to prove, that the deeds to *Roger* and *Walter* had been altered before delivery; and that the grantor verily believed, that he had thereby conveyed a title to the land described therein, although such evidence was objected to.

And the court decreed, that the respondents convey to the petitioner, the lands described in the deed to

*Walter;* and that she be discharged of all claims for rents thereof, &c.

The general errors were assigned.

*Goddard* and *Gould,* for the plaintiffs in error.

1. This decree could not be made against any of the respondents. Neither in law, nor chancery, can an instrument be rectified, because the parties were under a mistake in law. But however that might have been, in cases where there was a valuable consideration, yet here, there is no consideration, except that of love and affection. And where there is no other, chancery uniformly refuse to decree a specific execution. 1 *Pow. on Con.* 341. 2 *Pow. on Con.* 16. *Colman* v. *Sarrel,* 1 *Ves.* jun. 51. *Amb.* 406.

*Walter,* in his life, could have sustained no suit at law against his father, for damages, because the conveyance was voluntary, and chancery, *therefore,* would not have decreed a specific performance. And the case is surely not stronger against the children of *Archippus.* Besides, chancery requires stronger grounds, to make a decree, rendering an imperfect instrument valid, than to decree a specific performance. In the case of *Stapleton* v. *Stapleton,* 1 *Atk.* 10. there were a variety of considerations; Lord HARDWICKE lays no stress upon that of love and affection, but goes upon the ground of a valuable consideration.

In *Goring* v. *Nash,* 3 *Atk.* 186. the ground of the decree was, that it was a *marriage settlement,* which has always been holden to be, not merely a *good,* but a *valuable* consideration.

*Cory* v. *Cory*, 1 *Ves.* 19. was a petition, not for a specific execution, *but to set aside* an agreement; and the court refused to interfere, because it was a settlement of a family dispute. The facts, which have taken place subsequent to the deed, can have no operation. There is no analogy between the cases of a *parol* agreement for a *valuable consideration*, executed in part, and a *voluntary* agreement in writing. The cases under the statute of frauds, are all cases where there was a valuable consideration. Here, if *Walter* has made improvements, no injury will result to his heirs; for the contract being rescinded, an account must be taken, and they can retain the money expended in improvements.

And in the settlement of the estate, the advancements to the other sons will also be considered. Of still less importance is it, that the heirs have quieted *Roger* in his possession. It can in no way affect the petitioner; they may have compromised with him; but are not thereby bound to yield to the demands now made.

2. As the decree respects the daughters. There can be no equity in favour of the petitioner as against the daughters. If this is a family settlement, and if, as it respects the brothers, there was a valuable consideration, the daughters were not actually, or constructively, parties to it. They are, then, in equal equity with the devisees of *Walter;* and having the *legal* title, and equal equity, a court of chancery will not compel them to relinquish it, but suffer the law to have its course. 1 *Fonb.* 311, 312. *Mitf.* 215. It would be hard, indeed, if having received nothing from the bounty of their father, they are now to be deprived of what the law would give them. The court, indeed, have found, that the daughters received portions; but this fact, if material, must appear upon the petition. The plaintiff must recover in chancery, as well as at law, *secundum allegata, et pro-*

*bata.* At law, a special verdict cannot supply defects in a declaration; a bad declaration is no more aided by a special verdict than by a demurrer. But if the fact be immaterial, the court having found it, will not render it material. It can, therefore, have no effect in the case.

3. As it respects the dowress. It nowhere appears, that any provision has been made for the widow. She ought not, therefore, to have been compelled to convey. In *England,* the rights of a dowress are much regarded; she stands upon higher ground than a purchaser for a *valuable consideration.* She is entitled to a discovery from a purchaser of real estate from her husband, who had no knowledge of the marriage. 1 *Fonb.* 19, 20. 151, 152. Her equity is superior to that of heirs. 2 *Eq. Cas. Abr.* 383. A contract by her husband, for a valuable consideration, cannot be enforced against her. This contract could not be enforced against the creditors of *Archippus M'Call.* 3 *Atk.* 388. It cannot, therefore, be enforced against one whose rights are more carefully regarded.

Although a husband in this state may by deed deprive his wife of dower, it by no means follows that he can effect the same thing by an executory agreement, the enforcing of which depends upon the discretion of the court, regulated by circumstances. 2 *Pow. on Con.* 221.

It is said, that *Archippus* is a mere trustee. This is to assume, that chancery would enforce the contract against him. But were it so, there are now other parties, whose equity is as strong, and whose legal claims are preferable.

Again, our statute provides, that the wife shall have

dower in the estate of which the husband *died seised* (a)
A court of equity cannot decree against the provisions of
a statute.    *Webb* v. *Fitch et al.* 1 *Root*, 177. 1 *Fonb* 17.
21, 22. 4 *Vin. Abr.* 396. 2 *Eq. Cas. Abr.* 383. The hus-
band being seised of this estate, at the time of his death,
a court of chancery cannot say his widow shall not have
dower in it.

*Ingersoll*, for the defendant in error.

1. The facts proved lay a foundation for a decree
against *some* of the respondents.

If, as is contended, the agreement on the part of *Ar-
chippus M'Call* was voluntary, it would not have been
competent for him, in his life-time, after his son, in
pursuance of it, had taken possession, and made improve-
ments, to have refused to fulfil the agreement. A court of
chancery would not permit him thus to ensnare his son,
to induce him to expend his time, and money, upon the
faith of a defective conveyance; but would have protected
the son in the possession thus acquired. No case oc-
curs directly in point; but it is analogous to the cases of
part performance, under parol contracts to convey lands.
Chancery, in such cases, will decree a conveyance, not-
withstanding the statute of frauds; and one ground is the
fraud of the party contracting to convey. He shall not
be permitted to take the benefit of the labours of
another, who trusts to his engagements.

And if this is to be considered a voluntary convey-
ance, it would be as *effectual, against all but creditors,*
as a conveyance for a valuable consideration. But this
is not a voluntary conveyance. It is a *family provision;*

(a) *Stat. Conn.* tit. 51. c. 1. s. 1.

the consideration is *blood;* and the father did no more than by the ties of natural justice he was bound to do. The sons, then, who have received estates from their father, in consequence of this family arrangement, are not in equal equity with the representatives of *Walter.* He was as much entitled to his farm, as they were to theirs. They were *all sons,* and each entitled in justice to the portion designed him. Unless, therefore, the other sons give up their estates, they never can claim in a court of equity that *Walter* shall give up his. By the deed to *Roger,* the heirs have recognised this family arrangement; and therefore ought not to be permitted to dispute it.

2. As it respects the daughters.

It is found in the decree, that the daughters have received portions of the estate. It is said, this can have no effect, because it is not stated in the petition. But it is now too late to say this. It could have been taken advantage of only by objecting to the proof of that fact. As it has been proved, and found, it must be considered as well found.

But aside from this, the daughters, heirs of their father, can be in no better situation than he would have been in; and must convey, provided he would have been compelled to. Besides, this must be considered as a conveyance for a valuable consideration; a provision made for a family; " *estating*" his sons, in the language of our statute. Such conveyances are highly favoured in a court of chancery, and have been peculiarly protected. *Cory* v. *Cory,* 1 *Ves.* 19. *Goring* v. *Nash,* 3 *Atk.* 186. *Stapleton* v. *Stapleton,* 1 *Atk.* 2—8.

3. As it respects the dowress.

Had this deed been, what the parties meant, and sup-

June, 1809.  posed, it was, effectual to convey this estate to *Walter*,

M'CALL      the widow could have had no claim.  Then as chancery
   v.
M'CALL.     considers what is agreed to be done as actually done,
            from the time of the agreement, she can be considered
            in chancery, as having no right from the date of the de-
            fective instrument.   The estate was, then, equitably,
            *Walter's;* and the husband cannot here be considered as
            having *died seised.*  The land, therefore, did not descend
            to his heirs; and for the same reason, his widow has no
            right to dower.  That the rights of a dowress are to be
            regarded is not denied; but the question now is, what
            are her rights.

            That a court of equity will not relieve against the
            express provision of a statute is not contended; but the
            inquiry here is, does the statute apply to cases of mere
            trusts?  This was not an executory agreement by *Ar-
            chippus M'Call;* but an agreement executed, though
            imperfectly executed.  He had no more *equitable* title,
            than if the conveyance had been perfect.  And she who
            claims only by virtue of his title, can have no equity,
            which he did not possess.

            BY THE COURT.  The deed from *Archippus M'Call,*
            accompanied with the actual delivery of possession,
            under the circumstances, and in the manner, in which
            that deed was made, and delivered, cannot be considered,
            as an executory contract; but may be considered as a
            voluntary, though defective conveyance, which passed the
            whole equitable interest at the time, out of *Archippus,*
            and vested it in *Walter M'Call;* and though voluntary,
            being made with a view to a family settlement, and in
            the nature of a testamentary disposition of the estate,
            it is such a conveyance, as a court of chancery may
            validate, and when validated, and the defect in the con-
            veyance cured, it will have relation to the time of the

delivery of the deed, and not only bar the widow of her right of dower, but destroy all claims of the heirs of *Archippus* to the estate in question.

Judgment affirmed.