S. & P.
1sp 56
h180 454
131 129

### FRISBIE, et ux. *versus* McCARTY.

It is essential to the validity of a parol gift, of personal property, that possession should accompany the gift.

To render a deed valid and operative, there must be a delivery of it, either to the donee—or to some one for his use; or into the proper recording office.

This action was detinue in Washington Circuit Court, to recover a slave. Under the pleas of the general issue, and the statute of limitations, there was a verdict for the defendant. The bill of exceptions sealed in the cause, showed the following facts.

In the year 1812, Thomas White. the father of Sally D. White, now Sally D. Frisbie, made his deed of gift, in which he gave to said Sally, the slave, the subject of the action—that at the time the said deed was executed, McCarty, the defendant, was present and witnessed the same—that White said to the witnesses, in the presence of his children and the negro, that he had given or delivered the same, as mentioned in the deed—that Mrs. White, the mother, proposed to White that McCarty should take charge of the deed, and have it recorded, which White declined, saying that he would have it recorded himself.—that the deed was subsequently burned in White's house—that at the time of its execution, White was free from debt—that Sally D. Frisbie was then about ten or twelve years of age, and that suit had been commenced within six years after she became of age. In 1814, White sold the slave in question to the defendant, McCarty, and executed a bill of sale for the same. It was further in proof that there was an actual delivery of the slave, for equivalent consideration—that McCarty spoke to White on the subject of the gift of his daughter, and offered to rescind the contract—that White refused, saying, the property was his own, that he had never delivered the deed, nor had it been recorded —that he took a pen and erased from the deed, which he produced, the name of the slave in question, together with that of another, sold at the same time, It was also in evidence, that a deed of like character was seen several years after White's house was burned, in the clerk's office in Washington county.

Upon this evidence, the Court charged the jury, that it was essential to the validity of a deed, that

8

it should be signed, sealed and delivered. That while White retained the deed in his possession, the gift remained incomplete, and the deed was invalid. That in order to make a deed valid and operative in law, it was necessary for the donor to have made such a delivery of it, as would have placed it beyond his power of revocation. The Court further charged, that there was no such thing known to the laws of the State, as a parol gift of property, unless possession actually accompanies the gift.

CRENSHAW, J.—The question in this case is, whether the charge of the presiding judge to the jury, can be sustained by the law and the evidence?

The substance of so much of the testimony, to which I deem it essential to refer, is, that Thomas White, the father of Mrs. Frisbie, when she was ten or twelve years of age. by deed of gift, gave her the slave, which is the subject of the action—that other slaves were included in the deed given to his other children—that at the time of signing the deed, and in the presence of the slaves and of the children, White said to the witnesses, (of which the defendant was one) " I here give or deliver the negroes as mentioned in the deed, to these children, in your presence."—That Mrs. White proposed that McCarty should take the deed and have it recorded, which White declined, saying, he would have it recorded himself—that subsequently, within a month, White's house was burnt and the deed destroyed—that about two years afterwards, White sold the negro in dispute, for a valuable consideration to McCarty, and erased the name of the negro, saying, he had never delivered the deed, and that it had not

been recorded. The witness, Lester, swore that in 1816, he saw a deed in the Clerk's office, purporting to be a deed of gift of several negroes from White to his children When the deed was signed, White was in the attitude of moving with his family and property, and said he had fallen into unfortunate habits.

On this evidence, the Judge charged the jury, "that it was essential to the validity of a deed, that it be signed, sealed and delivered—that so long as White retained possession of the deed, without having delivered it to some third person, or to the Clerk to be recorded, the gift remained incomplete, and the deed invalid—that to give the deed validity, the donor should have made such a delivery as would have deprived him of the power of revocation, and that so long as he retained it, he reserved to himself the *locus pœnitentiæ*, and that there was no such thing as a parol gift, unless possession accompanied the gift."

If any, or what other instructions were given, the record does not inform us.

It is laid down in the best authority, "that at common law, a gift of personal property to be good must transfer both the right of property and the possession of the chattel, whereby one person renounces and another person immediately acquires all title and interest therein, and which may be done either by writing, or by word of mouth, attested by sufficient evidence, of which, delivery of possession is the strongest and most essential, and that a true and proper gift must always be accompanied with possession, and must take effect immediately." In the case of *Smith* vs. *Higgins*, decided in this Court, the same principle is recognized.

According to this definition, actual possession must accompany the gift, at least where the gift is by parol : if the donor continue in possession, or in other words, if the possession be not actually transferred to the donee or to some person for his use and benefit, the gift wants what a learned commentator considers its most essential ingredient, and would be absolutely void.

If this be the law, which I think cannot be denied, then the charge in this respect, was legally correct. It was the province of the jury to decide, whether the proof established the fact of possession. The Court, unless requested, was not bound to inform the jury, that if they believed the facts to be proved, (as stated in the bill of exceptions) that they did or did not amount to such a delivery of possession as would satisfy the law. And to this effect, is the case cited from 2 *Peters* 14.

In that case, Judge Story, in giving the opinion of the Court, expressly says " that it is no ground for reversal, that the Court below omitted to give directions to the jury upon any points of law which might arise in the case, when it was not requested by either party at the trial—that it is sufficient if the Court has given no erroneous directions—that if either party deems any point presented by the evidence to be omitted in the charge, it is competent for such party to require an opinion from the Court upon that point, and that the Court cannot be presumed to do more in ordinary cases, than to express its opinion upon the questions which the parties themselves have raised at the trial."

The case of *Goodwin* vs. *Morgan,* decided in this Court, establishes no rule or principle, which can

apply to the case before us. In that case, the Court seem to have been of opinion, that the formal ceremony of placing the hand of the slave into that of the donee, accompanied with words of donation, amounted to a perfect gift by parol. But the main question turned on the statute of North Carolina, which declared all parol gifts to be void. It was decided that the statute was intended for the benefit of purchasers and creditors; and that parol gifts were valid between the parties to the contract, if their rights did not conflict with the rights of creditors and purchasers.

I think the charge in relation to the deed, was equally correct.

That delivery is essential to the validity of a deed, ought not at this day to be called in question. So long as the donor retained possession of the deed, without ever having delivered it, either to the donee, if capable of receiving it, or to some person for his use and benefit, or into the proper office to be recorded, the gift is imperfect and the deed is void. It should be such a delivery as would deprive the donor of the power of revocation; for until then he reserves to himself the *locus pœnitentiæ*.

In the case of *Kirk and others* vs. *Turner*, decided in North Carolina, the Court held, "that a delivery of a deed is the parting with the possession of it by the grantor, in such a manner as to deprive him of the right to recall it; and that where a deed was handed to the subscribing witness, as the agent of the grantor for the purpose of being proved, and was by agent delivered back to the grantor, without being proved, this was not a sufficient delivery." In that case the Court say "that a delivery of a deed

is in fact its tradition from the maker to the person to whom it is made, or to some person for his use." The Court further held, " that it was unfair to resort to the declaration of the donor, in which she stated, that she had given the property to her children, when her conduct in the transaction refuted all idea of a parol gift, and clearly shewed that she intended to give by deed and not by parol."

In the case of *Clavering* vs. *Clavering*, cited from 2d *Vern.* 473, the Lord Keeper does indeed say, that though the deed remain in the custody of the grantor, yet that did not give him the power to resume or alienate the estate ; but in that case it is fair to presume that the deed had been duly executed, and had taken effect by a formal delivery. And I now admit that when a deed is once executed and delivered, so as to take effect, that it is not in the power of the grantor to annul the deed or resume the estate, though the deed remain in his possession.

Whether there was or was not such a delivery, or whether the facts proved by the evidence amounted to such a delivery, were matters determined by the jury, and on which it does not appear that the Court was requested to give more specific instructions. The charge might have gone further, but as far as it did go, I think it was well sustained by the law and the testimony,

I am aware that this Court has decided, and I believe correctly, that the delivery of a deed may in some instances be presumed,—that where the donee is in possession of the deed, in absence of proof to the contrary, the law presumes a delivery. But it has never been decided here, or in any other Court, that an absolute deed was good, unless a delivery had been

established, either by express proof or by legal presumption.

Whether the deed was good or bad, our statute of frauds has no bearing on the subject, as between the present parties. If the gift had been completed by a delivery of the deed, the defendant, McCarty, being a witness to the deed, had ample notice; and his purchase would be void, though the deed was never recorded. The law is well settled, that the object of recording is to give notice of the incumbrance to creditors and purchasers, and if they have express notice from another source, this is sufficient, though the instrument be not recorded. I am for affirming the judgment.

COLLIER, J.—The plaintiffs claim title under a deed of gift from Thomas White, the father of Mrs. Frisbie, to a negro woman: the negro was delivered, but the deed was not. The defendant witnessed the deed, and several years thereafter purchased the negro in question, from the grantor. The presiding Judge instructed the jury "that it was essential to the validity of a deed, that it should be signed, sealed and delivered; that so long as Thomas White retained possession of the deed of gift, under which the plaintiffs' claim title to the negro in question, without delivering it either to some third person, or to the clerk to be recorded, the gift remained incomplete, and the deed invalid; that, in order to make the deed valid and operative in law, it was necessary for the donor to have made such a delivery of it, as would have placed it beyond his power of revocation; and that so long as he retained it, he reserved to himself a *locus pœnitentiæ*."

The Court further instructed the jury, that there was no such thing known to the laws of this State as a parol gift of property, unless possession actually accompanies the gift.

The first branch of the instructions presents the question, whether delivery is essential to the validity of a deed.

Before a deed can become operative at law, it is well settled, that it must be delivered to the grantee, or [a] some third person for him.[a] This third person need not be first deputed by the grantee to receive [b] the deed, but he may be a stranger—*Tant* vs. *Berry ;*[b] [c] *Doe* vs. *Knight ;*[c] *Butler's & Baker's case*[d]—for the [d] assent of the grantee will be presumed, unless he signifies his dissent. Nor is it important to the efficacy of a deed, that the possession of it should continue with the grantee—a possession retained but for an instant of time, invests him with the interests which it professes to convey to him, and they cannot be divested by the grantor's afterwards acquiring its custody, unless the custody be acquired and held under circumstances which authorise the inference [e] of a fraud.—*Souverbye & wife* vs. *Arden et al.*[e]

It will be unnecessary to enquire what circumstances are essential to a delivery. It is obvious that the facts of this case do not show that the deed was delivered, as its custody never passed from the grantor; and he manifested by his declarations that he did not intend to deliver it at the time of its execution.

The second branch of the instruction was uncalled for by the facts; for if the deed be invalid, the plaintiffs could not discard it and claim by force of the delivery of the negro, made at the time of the exe-

[a] 4 Kent's Com. 446.
[b] 2 Dyer 167
[c] 5 Barn & Cress. 671
[d] 3 Co. 26 b
[e] 1 John's Ch Rep 240

cution : that constituted but a part of the *res gestæ*, and had a reference to, and was dependent upon the deed.

So far as this case is concerned, it is unnecessary to give to it further discussion ; but as it has been suggested that other causes await the destiny of this, it may be well to consider, whether equity can lend any assistance to a voluntary deed inoperative at law, because of its non delivery. This question has been so frequently and fully examined, that I shall not attempt to present it in a new aspect.

A voluntary settlement, fairly made, is valid in equity, though the grantor never part with the possession of the deed, unless it manifestly appear that he never intended to relinquish his control over it. And the circumstance of his retaining the possession, apart from others less equivocal, will not prevent the interference of equity in favor of the grantee— *Souverbye & wife* vs. *Arden & others.*[a]

The case of *Clavering* vs. *Clavering*,[b] goes further perhaps to sustain settlements, than any modern case has done ; yet I am not aware that its authority has been questioned. In that case, the father in 1684, made a voluntary settlement of an estate subject to some annuities, in trust for his grandson and his heirs, and afterwards in 1690, he makes another voluntary settlement of the same estate to other uses, and by will gives a considerable estate to his grandson. Although it was proved that the grandfather always kept the settlement of 1684 in his custody and never published it, it was after his death found amongst waste papers ; and the deed of 1690 was often mentioned by him ; and he told the tenants, that the person provided for by that deed was to be their

[a] 1 Johns. Ch. R. 240 6 Vez. jr. 656, 2 P. Wms. 467. *ib.* 357, 3 Atk. 185, 1 Vern. 464 2 Vern 473

landlord after his death; yet it was holden that the settlement of 1684 prevented the operation of that of 1690. The Lord Keeper, in declaring his opinion, observes, "although voluntary conveyances, if defective, shall not in many cases be supplied in equity, yet where there hath been a covenant to stand seized to the use of a relation, though it is a voluntary settlement; yet this Court in the ancient of times, always executed such uses. In the Lady Hudson's case, where the father, having taken displeasure at his son, made an additional jointure on his wife, but kept it in his power; and being afterwards reconciled to his son, cancelled the additional jointure, and died, the wife, after his decease, found the cancelled deed and recovered by virtue of it." The decree of the Lord Keeper was affirmed on appeal, in the House of Lords.

*1Atk. 625.* In *Boughton* vs. *Boughton*,[a] it was decided by Lord Hardwick, that one voluntary settlement could not be set aside by another, subsequent in point of time. To the same effect is *Villers* vs. *Beaumont et al.*[b] and *1Vern 100* *Johnson* vs. *Smith.*[c] But equity will not carry an *1Vez. 314* agreement into execution without a valuable or meritorious consideration— *Williamson* vs. *Codrington*[d]— *1Vez. 512* so that a gift from one not related to the donor, will not receive assistance from chancery for its completion.

*1 P. Wms* In *Naldred* vs. *Gilham*,[e] the aunt made a volunta-*577.* ry settlement upon her nephew, a boy of four years old. The deed remained in her possession, and some years afterwards she made a different settlement on another nephew. The report of the case does not disclose the circumstances which attended the execution of the first deed. Lord Macklesfield refused to give ef-

fect to the first settlement, and concluded that from the fact of the aunt's keeping the deed by which it was made, *and from other circumstances*, that she was surprised and imposed on, in making it absolute and without power of revocation. In noticing this decision in *Boughton* vs. *Boughton*, Lord Hardwick remarks, that it is not applicable to every case, but is dependent upon particular circumstances.

*Cotton* vs. *King* was a case in which the mother [a2 P. Wms 358.] made a settlement in trust for her children, and delivered the duplicate deeds into the hands of her attorney, "with a strict charge that he should not part with them," and no other person was privy to the transaction. Lord King held, the settlement was not binding. [b Prec. in Ch. 182.]

In *Lant* vs. *Ward*,[b] the father executed a voluntary bond to his daughter, without condition, payable immediately. He retained the possession, and it was proved that it was never intended to be operative, but only designed to protect the father from the payment of taxes : it was therefore set aside.

In *Bunn & others* vs. *Winthrop & others*,[c] it was [c 1 Johns. ch. R. 329.] decided, that "a voluntary conveyance, or settlement, though retained by the grantor in his possession until his death, is good."

*McCall* vs. *McCall*,[d] recognises the competency of [d 3 Day 402] chancery to effectuate a voluntary conveyance, made with a view to a family settlement. [e Conn. R. 111.]

In *Jones* vs. *Jones*,[e] a father in consideration of natural affection, executed deeds of part of his estate, to two of his children, to secure a provision for them; but retained such deeds in his custody, and gave directions to his wife to lodge them with the town clerk for record, which was accordingly done. It

was held, that this was such an agreement as chancery would enforce.

It may be well to enquire, whether equity will perfect a voluntary settlement against a purchaser, with notice from the grantor. This must depend very materially upon a just construction of our statute of frauds. The 2nd section of that act declares all gifts, grants, &c. made on purpose to *delay, hinder* or *defraud* creditors, or to *defraud* or *deceive* purchasers, utterly void, and requires all conveyances to be registered, &c. This enactment bears an analogy to the statutes 13th & 27th *Eliz.* and the interpretation given to them in regard to voluntary conveyances, should be consulted in adjusting the true construction to be placed upon this. The determination of the four great Courts at Westminster, all concur in the conclusion, that a voluntary conveyance, though sustained by a good consideration, is void under these statutes against a purchaser for a valuable consideration, and it is immaterial whether the purchaser had notice of the prior deed[a]—*Doe ex dem. Otley* vs. *Manning,*[b] *Doe* vs. *Martyn,*[c] *Hill* vs. *Bishop of Exeter,*[d] *Doe* vs. *Hopkins in Excheq.*[e] These decisions have been disapproved by very eminent Judges in England, as giving to the statute of 27 Eliz. an exposition unauthorised either by its spirit or phraseology. Mr. Justice *Spencer,* in *Verplanck* vs. *Sterry,*[f] says, there is a want of harmony in the English decisions on this point previous to our revolution; yet, he thinks " the preponderance in weight and number is decidedly adverse to the doctrine which now prevails in the Courts of Westminster Hall." By a reference to the earlier decisions, it will appear that it was a matter to be left to the jury, on which they passed, whether

[a] Evelyn v. Temple, 2 Bro. 148.
[b] 9 East 59.
[c] 4 Bos. & Pul. 332.
[d] 2 Taunt. 82.
[e] 9 East 79
[f] 12 Johns. 555.

a voluntary conveyance as such was fraudulent. Among those who favored this course of decision, are mentioned Lord Hale, Lord Rolle, Chief Baron Gilbert, and Chief Justice Eyre; and among those opposed to it, are ranked Lord Hardwick, Chief Justice De Grey, and others. Lord Mansfield maintains the construction inculcated by the Judges who lived nearest the passing of the act.—*Doe* vs. *Rutledge.*[a] [a]Cowp.713

The 13 *Eliz.* which relates to conveyances with intent to defraud the creditors of the grantor has received a construction entirely different from the prevailing doctrine with regard to the 27th. Mr. Justice *Spencer* in the case referred to, is of opinion not only from the regret expressed by the Judges and Chancellors of England, but also from the evident discrepancy in the construction of the two statutes that the later decisions have been influenced by a sort of judicial expediency, rather than an adherence to the wording or meaning of the 27th *Eliz.*—it was to avoid the unsettling of estates.

But whatever considerations may have induced this unnatural construction of the 27th *Eliz.* they can have no influence in the exposition of our statute of frauds: we are free from their operation and may consult alone its language and spirit. It is doubtless the design of that act to avoid conveyances made with the intent to defraud creditors and purchasers: the intention therefore must ever be a material inquiry and this being a matter of fact, must be passed on by a jury.

Again—our statute expressly recognises conveyances, unaccompanied by possession, made not on a valuable consideration, when registered according to its requisitions. The object of registration is to give

notice to the world; yet it does not exclude the idea that notice may be given in some other way, and it is well settled upon authority, that it may be : when, therefore, a purchaser has actual notice, his purchase can not be sustained, by alleging the want of registration. He can not occupy a more favorable situation than the grantor : he stands in the same attitude. But the claim of a purchaser without notice, actual or constructive, would prevail against a voluntary grantee.

I have thought it proper, in order that the rights of the parties may be understood to examine the principles which the facts of the case suggest. I do not intend to intimate that the plaintiffs are entitled to recover in any *forum ;* and as it is clear that they have no remedy at law, I decline making a particular application of the principles discussed.

The judgment is affirmed.

LIPSCOMB, C. J. not sitting.