# Seeley v. Curts.

## Detinue.

(Decided April 8, 1913. 61 South. 807.)

1. *Deeds; Delivery; Deposit for Delivery After Death.*—A delivery of a deed to a third person to be held until the grantor's death, and then delivered to the grantee named therein is a valid delivery if there is no reservation by the grantor, express or implied, of the right to retake it, or otherwise control its use.

2. *Same; Jury Question.*—Where the action was against an administrator to recover possession of the deed, and a witness testified that such administrator told him that he visited his intestate during the week before he died and urged him to make a will, but that the intestate said everything was fixed, that a will was not necessary, and told the administrator where he would find certain papers, with directions as to what was to be done with them, and that the administrator should mail them to the addresses appearing on the different envelopes, that the administrator thereafter found three envelopes, one addressed to plaintiff, which he opened and found to contain a properly executed deed to her, such evidence was sufficient to make it a question for the jury as to whether the intestate delivered the deed to the administrator, with the present intention of divesting himself of title, to take effect after death, notwithstanding the administrator testified that it was understood that the deeds were to be returned to the grantor if he got well.

3. *Same; Reserving Control.*—If a grantor delivers deeds to a third person for safekeeping only, and delivery to the grantees after his death, but with the understanding that they were to be restored to him in case he got well, the delivery was conditional and the

grantor did not lose his right of revocation; hence, in an action against such third person to recover possession of the deed by the grantee therein, where there was evidence of an understanding to restore the deeds if the grantor got well, instructions that if such was the understanding then there was no legal delivery, were proper, and their refusal error.

4. *Appeal and Error; Assignment; Urging Error.*—Where the assignment as to two charges was argued at length in brief of appellant in arguing another assignment as to a charge which involved practically the same legal proposition, it constituted a sufficient insistence as to the two other charges to warrant the court in considering them.

APPEAL from Mobile Law and Equity Court.

Heard before Hon. SAFFOLD BERNEY.

Detinue by Rosa Curts against N. L. Seeley, individually and as administrator, for a deed. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Transferred from Court of Appeals under Act of 1911, § 6, p. 449.

It appears from the evidence that plaintiff was a granddaughter of John B. Campbell, deceased, and that Seeley was the administrator of the estate of said Campbell. It appears from the answers of O'Donnell that Seeley told him about the last illness of Campbell, that he visited Campbell every day during the week before he died, and urged him to make a will, but Campbell remarked that everything was fixed, and that a will was not necessary, and then told Seeley he would find certain papers in the top drawer of the writing desk, and would find a key thereto in Campbell's vest-pocket, and that the directions as to what was to be done with the papers would be found written on them, and that Seeley should mail the papers to the parties whose addresses appeared on the different envelopes; that Seeley stated to him that, after Campbell's death, he found three envelopes, one of them addressed to the plaintiff in this case, and that Seeley stated that he

opened the envelopes on the advice of his attorney, and in the one addressed to Rosa White, now Curts, was a properly executed deed, conveying all of Campbell's property located in Citronelle, Ala., to said Rosa White. ·

The contention of the defendant is set forth in the following charges which were refused him, as follows:

"(4) The court charges the jury that, before you can find for the plaintiff, you must believe from the evidence that it was the intention of J. D. Campbell that Seeley should deliver this deed to Rosa White, the grantee therein, and if, when the deed was turned over to Seeley, Campbell told him to return the deed to him, Campbell, if he, Campbell, got well, then this would not be a legal delivery of the deed to Rosa White, and you should find for the defendant.

"(5) If Dr. Campbell told Seeley to take the deed sued for with other papers, and take care of them until he, the said Campbell, got well, and in case he got well to deliver same back to Campbell, and in case said Campbell died Seeley would find directions on the papers what to do with them, then this would not entitle the plaintiff to the recovery of this deed, and your verdict should be for the defendant.

"(6) The court charges you, gentlemen of the jury, that if you find from the evidence that J. B. Campbell at the time he surrendered possession of the deed to Seeley directed Seeley to return it with the other papers to Campbell, if he should get well, then you should find for the defendant.

"(7) If Seeley was Campbell's agent and received the deed in question, along with other papers from Campbell for safe-keeping, to be returned to Campbell when he got well, then you should find for the defendant."

[Seeley v. Curts.]

R. Percy Roach, for appellant. The defendant cannot be liable in this action as administrator.—*Shorter v. Urqurhart,* 28 Ala. 366; *Daily v. Daily,* 66 Ala. 268; *Lowery v. Daniels,* 98 Ala. 452. If liable individually, then the court was in error in declining to give the charges requested by him, wherein it is asserted that if the grantor provided that the deeds were to be returned to him in case he got well, then there was no such delivery of the deeds as would pass the title.— *Fitzpatrick v. Brigman,* 130 Ala. 454; *Culver v. Carroll,* 57 South. 768. There was no valid delivery under the facs in this case.—*Goodlett v. Kelly,* 74 Ala. 220; *Fuller v. Hollis,* 57 Ala. 437; *Tarwater v. Goins,* 140 Ala. 274, and authorities supra.

Stevens, Lyons & Dean, for appellee. Under the authorities cited by appellant plaintiff was entitled to the deed sued for. However, this is an action of detinue, and plaintiff would be entitled to the deed as personal property although it should be conceded that she would not be entitled to recover the land by virtue of the deed. Under the statement of the witness as to what the administrator told him relative to the deeds, it was a question for the jury as to whether there was a complete delivery or not.—58 Am. Rep. 519; 114 Pac. 399; 169 Ala. 614; 57 South. 459. Instead of the inference going to show an intent to revoke or destroy the deeds if they were returned to him, the grantor's clearly expressed intention was to carefully preserve it for the plaintiff.—*Arrington v. Arrington,* 122 Ala. 510, and authorities cited by appellant. Charges 6 and 7 are not sufficiently urged in argument to require their consideration.—153 Ala. 635; 159 Ala. 257. If defendant retained the property it was not required of defendant to ascertain in what capacity he professed to hold it.

[Seeley v. Curts.]

It was sufficient that he had it.—*Smith v. Wiggins*, 3 Stew. 226; *Bettis v. Taylor*, 8 Port. 574; *Oliver v. Hearn*, 4 Ala. 271; see also 82 Ala. 569; 124 Ala. 535.

ANDERSON, J.—"A grantor may deliver a deed to a third person, to hold until the grantor's death, and then to deliver it to the grantee. Such a delivery is perfectly valid; but the deed must be left with the depositary without a reservation by the grantor, express or implied, of the right to retake it or otherwise control its use."—9 Am. & Eng. Ency. Law, 157, and numerous authorities there cited. Our own court, in the case of *Fitzpatrick v. Brigman*, 130 Ala. 450, 30 South. 500, speaking through Justice TYSON, said: "For so long as he reserves to himself the locus pœnitentiæ, there is no delivery—no present intention to divest himself of the title to the property. We take it that the grantor need not expressly reserve to himself this right to repent; but if his act, upon which a delivery is predicated, does not place the deed beyond his control as matter of law, then his right of revocation is not gone."— *Frisbie v. McCarty*, 1 Stew. & P. 56; *Foster v. Mansfield*, 3 Metc. (Mass.) 412, 37 Am. Dec. 154; *Griswold v. Griswold*, 148 Ala. 241, 42 South. 554, 121 Am. St. Rep. 64; *Gulf Cedar Co. v. Crenshaw*, 169 Ala. 606, 53 South. 812.

There was evidence from which the jury could infer that Campbell made the delivery to Seeley with the present intention of divesting himself of the title to the property, to take effect after his death, and that he placed the deed beyond his control. See admissions of Seeley to Jas. B. O'Dowell. It is true that Seeley testified that it was understood between him and Campbell that the papers were to be returned to the grantor Campbell if he got well, but the jury could infer from

other statements made by him, the said Seeley, that such was not the case, and that Dr. Campbell did not expect to get well, and gave him the papers unconditionally for delivery, as per directions therein contained, immediately after his death, and did not provide for a return of same in the event he got well. There is more proof in this case, from which the jury could infer an unconditional delivery, or that the grantor did not intend to retain the control of the papers, than there was in the case of *Culver v. Carroll,* 175 Ala. 469, 57 South. 767.

Of course, if Dr. Campbell delivered the papers to Seeley only for safe-keeping, and to be delivered to the grantees after his death, and with the understanding that Seeley was to restore them to him in case he got well, then the delivery was conditional, and the grantor did not lose his right of revocation. The facts in the case at bar differentiate it from the case of *Arrington v. Arrington,* 122 Ala. 510, 26 South. 152. There the grantor delivered the deed to the mother of the grantees as trustee for them to be delivered to them after his death, but stated that, if the mother survived him, he would look after them for the children, meaning that he would undertake to do what the mother was to do, and not that he reserved the right to recall the deeds for his own benefit, or that he reserved the control over same or made the delivery to the mother subject to his option to repent and reclaim the deed. In the instant case the delivery to Seeley was either to have him carry out the written instruction to deliver the papers after his death and with no intention that they would be restored to him, or that Seeley was to keep and deliver, in case he did not survive the existing illness, but was to return them to him, not as a trustee for the grantees, in case he got well. If the jury believed the first

[Seeley v. Curts.]

theory, there was such a delivery as to effectuate a valid execution, and, if they believed the second theory, there was not such a delivery as would constitute a legal execution of the deed.—*Culver v. Carroll, supra; Fitzpatrick v. Brigman*, 133 Ala. 243, 31 South. 940; *Cook v. Brown*, 34 N. H. 460; Devlin on Deeds (3d Ed.) p. 435. The defendant's refused charges 4, 5, 6, and 7 were fair presentations of his theory of the case. It may be that charge 4 could have been refused for using the word "believe," instead of "reasonably satisfied," but the other three should have been given. We also think that the record shows that these charges were asked in the usual and orderly way, and before the jury had retired.

It is also suggested that there is not such an insistence in appellant's brief as to charge 6 and 7 as will warrant this court in considering same. They involve practically the same legal principle as charges 4 and 5, which are argued at length under the assignments addressed to said charges 4 and 5, and which said argument relates to charges 6 and 7 also.

The judgment of the law and equity court is reversed and the cause is remanded.

Reversed and remanded. All the Justices concur, except Dowdell, C. J., not sitting.

MAYFIELD, J.—(concurring).—I concur in this decision for the reason that this court and many other courts seem to be too far committed to the erroneous doctrine to change it by judicial decision. To change it now would be for the court to make law, not to declare it, which, of course, is not a function or office of the courts. The change should be left to the Legislature, which has wrought many along the same lines.

But for the fact that the rule complained of is a

snare or pitfall in which to cast honest and innocent grantors and grantees it might be as well to let it remain undisturbed, because of its antiquity. It is a rule, however, so technical that it will never be understood, respected, or obeyed by the American people. It is not in accord, but out of tune, with most all of our other laws as to conveyance and alienation of lands. It is a relic of feudalism, a substitute for, but an imitation of, livery of seisin. The rule is at war with our customs. habits, common understanding and common sense. It has never tended, and will and can never tend, to promote justice; its very object and purpose is to defeat the will and intention of the grantor in the honest and economical disposition of his property. To prevent this result, the courts have had to create a legal fiction which they apply in rescuing the rights and property which would otherwise be lost and destroyed by the erroneous rule. This fiction is that the courts treat a deed which the rule says was never delivered as a will, thus giving effect to the will of the grantor, and preventing the defeat of justice. But, if the deed is not executed with the formalities provided for the execution of wills, the fiction cannot be applied to enforce the will of the grantor or to do justice to the grantee. The fiction, however, necessitates costs, expenses, and delays, which the grantor intended to avoid in disposing of his property by deed rather than by will.

No stronger case to prove this result could be found than the one now under consideration. Here the grantor was asked if he desired to make a will; and he replied that it was of no use, that he had disposed of his property by deed, and placed the deeds in the hands of his friend, each in a separate envelope, addressed to the respective grantees, with instructions to deliver them at his death if not called for. They were never

called for, and the condition and contingency (the death of the grantor) has occurred. Why this should not constitute a good delivery it is difficult to understand. In truth and in fact there is no reason except the rule in question. It says this is no delivery, that the deeds in law have no existence, that the grantor died owning the lands, although he fully intended to dispose of, and thought he had disposed of, the same by deed drawn in accordance with his wishes. And the rule in question was unknown to the grantor, to the grantees, to the depositary, and to every other person who had not recently looked up the ancient lore as to delivery under such conditions.

The rule here and now proves itself to be what it has ever been and always will be—a mere snare or trap in which to catch honest and innocent grantors who desire to dispose of their property honestly and economically. There is not, and probably never will be, an instance where, the rule having been invoked, the honest will and intention of the grantor is not defeated, and his property thus given to those whom he did not desire to receive it. Of course, the case of which I am speaking is the one in which the grantor never calls for the deeds, and dies, believing he has disposed of his property as he wishes.

The rule also opens the door to the grossest of frauds. It allows the will of the grantor, expressed in the most solemn form, and in writing, to be defeated by the slightest parol proof that at the time of the delivery to the depositary he intimated that he might thereafter call for them, and, if he should do so, that the delivery should not be perfected. The slightest parol proof is thus allowed to defeat the most solemn form of written evidence as to title, and to do so years thereafter, even after the deeds have been recorded, and the grantees

have sold to bona fide purchasers. Under this rule, as is shown in the case of *Culver v. Carroll,* 175 Ala. 469, 57 South. 767, years after the title of the grantees or of those claiming under them may be wholly destroyed by the slightest parol proof, or by the mere failure of parol proof to show exactly what was said when the grantor left the deed with the depositary. There is no reason or justice in such a rule; and, the only excuse for its existence having ceased, the rule itself ought to cease, as has the rule in *Shelly's Case,* together with many others like the one in question.

To illustrate, by applying the rule to the case in hand: It is made certain that the rule may defeat the honest and innocent will of the grantor, and confer title upon those who have no moral or legal right to the property, other than that the erroneous rule confers. Suppose the depositary in this case had delivered the deeds, as was done in the *Culver Case,* and the grantees had recorded them, and had conveyed the lands to innocent purchasers; and years after, in a suit involving the title to the lands in question, he should come into court and swear that when the grantor left the deeds with him he said he might call for them, and he might not, that, if he did not deliver them to the grantees, and that the deeds never being called for, and the grantor having died, he delivered them as instructed. Under this rule, the titles of these innocent purchasers would be absolutely destroyed, and without fault on their part or on that of any other person. For this reason it is well that this litigation is started early, so that as few people as possible may be deprived of their rights by the operation of this rule. So long as the grantor is living, and there has been no absolute delivery to the grantee, no injustice results from holding that such a deposit of the deeds does not constitute

[Seeley v. Curts.]

a delivery; but after the death of the grantor, without his ever having called for them, with the intention and in the belief that they would be delivered, and every condition of the delivery being fulfilled, to say that there was no delivery because the grantor had the right to recall the delivery up to the moment of his death, and that there could be no delivery thereafter, is in my opinion to state a mere technical rule unsupported by any sound reason. So long as the grantor was living, he had rights in the premises, and his intention was to protect those rights, and the law should aid that intention; but this unmistakable intention and will was that, if he did not recall the delivery, it should and would be effective at his death, and the law should aid rather than prevent the fruition of this honest intention to thus dispose of his property at his death. It is one of those instances in which justice cries loudly for legislative relief from the shackles placed upon it by feudalism. Under this rule, as is conclusively shown and decided in the case of *Culver v. Carroll,* 175 Ala.. 57 South. 767, any title that depends exclusively upon deeds may be destroyed at any time by parol proof that any one of the deeds in the chain of title was not actually delivered to the grantee named within the lifetime of the grantor, unless it can be also proved that the grantor parted with and surrendered all control of the deed before his death.

Such a prevarious condition of titles should not be allowed to longer remain.