(126 So. 409)

### FIRST NAT. BANK OF MONTGOMERY et al. v. SHEEHAN.
### 3 Div. 916.

Supreme Court of Alabama.

Jan. 28, 1930.

Steiner, Crum & Weil and John L. Good-wyn, all of Montgomery, for appellants.

Ball & Ball, of Montgomery, for appellee.

THOMAS, J. The appeal requires a construction of the will of Capt. William T. Sheehan. The reporter will insert plat A in the report of this decision.

The late Capt. William T. Sheehan at his death left a will in which he created a trust estate, naming therein appellant First National Bank of Montgomery as trustee. His beneficiaries were his wife, Mrs. Elizabeth W. Sheehan, one of the appellees, and their four children, three of whom are minors and one of age. The trustee took possession of the trust property, and has been administering the same under the terms of said will. At his death testator owned, and under the terms of his will devised to said trustee, as a part of the trust estate, lots 3 and 4 in Cloverdale, shown by the map exhibited as a part of the bill. On these lots is situated the Sheehan homestead, occupied by the family as a home. These lots faced, as will be seen from the map, 75 feet, respectively, on Cloverdale road. Adjacent thereto are lots 5 and 6 of the same plat, which were and are owned by Mrs. Sheehan, the widow of testator and the petitioner appellee.

Mrs. Sheehan recently, and after the death of testator, desired, intended, and contracted to erect on lots 5 and 6 (her individual property) two residences as an investment; and without having these lots surveyed, so as to ascertain their true boundary line, but thinking that she knew their true boundary lines, as with relation to that of the trust property, undertook to point out to the contractor the boundary line between her lot 5 and lot 4 of the estate of testator. She made a mistake as to that boundary line, and her contractor erroneously constructed one of the residences contracted for by her, a frame one-story house in the rear of the property, and built the same almost entirely on lot 4, belonging to the trust estate. This error was not discovered until after the house had been completed, and when she undertook to borrow money (by way of mortgage on the property) to complete payment of same and discharge the builder's lien, when for the first time the property was surveyed. She then discovered that this house erected by her was located partly and largely on the trust estate's land and on the rear of lot 4.

Complainant then approached the First National Bank, as said trustee of her husband's estate, and requested it to convey to her the parcel or part of lot 4 on which her house was erroneously located, as indicated on exhibit map as parcel A. It will be seen that it is a parcel carved out of lot 4 belonging to the estate of testator and held in trust by the trustee, and on which complainant's house is located, and which gives access to her other part of lot 5. The bank as trustee made reply that, if it had the power under the will to sell and convey this property to her, it would do so at and for an adequate consideration, yet felt that under the terms of said will, as trustee, it had not the authority to sell and convey this parcel of land to her to obviate her mistake and relieve her of difficulty, for one reason, that it was only a strip or part of the homestead, and she was one of the cestuis que trust under the will. The bank, as trustee, further replied that it did not believe that under the terms of said will it had any right to sell the homestead, except as a whole, rather than in strips or parcels, and had no right to sell to her, as one of the beneficiaries, a strip or parcel, thereby benefiting her, perhaps to the damage of the remaining cestuis que trust. The insistence was and now is that, if the trustee had or has the power, under the terms of the will, to sell and convey this strip or parcel to one of the beneficiaries, it would be willing so to do at and for an adequate consideration, and questions its right to so sell under the terms of the will.

Complainant, as one of the beneficiaries of the estate, filed the necessary petition to remove said estate from the probate court to the circuit court, in equity, which was done. Thereafter she filed this petition in said cause, asking said court to construe the will of her late husband, alleging that it was ambiguous, and that its intent was and should be so construed by the court to authorize the trustee, under paragraph 1 of item 3 of said will, to act in accordance therewith and to sell and convey said strip of land to her, one of the beneficiaries, at and for a full and adequate consideration. Demurrers and answer thereto were filed by the respondent and by the guardian ad litem for the minors. In the demurrers and answer of appellant bank, it took the position that the terms of said will, and particularly paragraph 1 of item 3, which is the part involved here, are not ambiguous; that the intent of the testator is shown to have been and to be that, while the bank, as trustee, was authorized in its discretion to sell and convey the entire homestead to any bona fide or disinterested purchaser, it was not intended and was not given the authority to split up the homestead and sell and convey parcel A thereof to any one or to a beneficiary.

Testimony of competent and experienced real estate men of this community was taken

by all parties in support of the petition and answer. After consideration thereof, and the said will, the trial court rendered its decree, holding that the will was ambiguous and construing paragraph 1 of item 3 of testator's will to give the trustee the right to sell this parcel to Mrs. Sheehan, one of the beneficiaries, and fixing an adequate consideration at $700, from which decree this appeal is prosecuted.

It is stated in brief of distinguished counsel that not one of the respective parties has fault to find with the just and adequate consideration fixed under the evidence. It is further stated by counsel that, if the terms of the will give the trustee a discretion to sell, it is perfectly willing to exercise that discretion and sell and convey the parcel, on which complainant's house is erroneously located, to Mrs. Sheehan.

The assignments of error 1 to 7, inclusive, all go to the ruling of the trial court in overruling the contentions raised by this trustee and appellant. Each of these assignments is so closely interlocked that, following the practice approved and commended by this court in Southern Ry. v. Cates, 211 Ala. 282, 100 So. 357, Polytinsky v. Johnston, 211 Ala. 99, 99 So. 839, and Seeley v. Curts, 180 Ala. 445, 61 So. 807, Ann. Cas. 1915C, 381, the brief groups the assignments of error and directs attention thereto as if separately presented in argument.

█ In the first place, it is admitted that a bill or petition will not lie to construe an unambiguous will. Hoglan v. Moore, 219 Ala. 498, 122 So. 824; City Bank v. McCaa, 213 Ala. 579, 105 So. 669; Birmingham Trust v. Cannon, 204 Ala. 336, 85 So. 768; 40 Cyc. 1845. Pertinent provisions of item 3, subsection 4, of said will are:

"(4) *My said wife shall have the right to dispose of such portion of the trust estate as may remain at her death by her last will and testament, but should she fail to dispose of said property by a will* then the same shall be distributed share and share alike to our children, the child or children of a deceased child, if any, taking the parent's share. Said trustee shall hold in trust and distribute as it sees proper the portion which go to a minor beneficiary under the terms hereof until such minor, reaches the age of twenty-one years." (Italics supplied.)

The only beneficiaries under the will of the testator were appellee and her children. One of said children is of legal age, and has consented to the sale at the price fixed by the court, which is, in all respects, full or adequate. The other three children are minors, and cannot legally speak for themselves. It is also apparent from the testimony that no one can be hurt by the decree rendered. To the contrary, the amount received for this small parcel of land will make it productive,

as earning interest for the wife, and it is unproductive now. It is also established that the salability of the homestead will not be affected, and probably its value will not be reduced, certainly not more than that sum now added by the sale to the corpus of the trust.

██ Inspection shows that the provision in the will with reference to the power of sale of the home place is couched in such language that the trustee is in doubt as to whether it has the right to make the sale of a portion of the home place or homestead to one of the beneficiaries under the will. The trust officer of the bank has testified to that effect. The questions raised by the trustee justify it in insisting that it be instructed and guided in the administration of the estate under the terms of the testamentary trust, as affecting the cestuis que trust. It would be entitled to file a bill or petition for its instruction. Any beneficiary may likewise file petition for that purpose. There is no rule of law that would forbid a beneficiary from purchasing a part of the estate, if it may, and same was exposed for sale, provided its value was paid therefor from the individual fund of such purchaser. If, by mistake of fact as to the line of lots 4 and 5, a house was wrongfully erected thereon by a third party, the right of the trustee to aid in the correction of same by a sale of the small strip or parcel of land on which that building stood and gave access to Mrs. Sheehan's other lot would not be questioned under this evidence.

It will not be necessary to do more than cite the authorities reciting the cardinal rules of testamentary construction. Ralls v. Johnson, 200 Ala. 178, 75 So. 926; Gunter v. Townsend, 202 Ala. 160, 79 So. 644; Ashurst v. Ashurst, 175 Ala. 667, 57 So. 442; Pearce v. Pearce, 199 Ala. 491, 74 So. 952; Tolley v. Hamilton, 206 Ala. 634, 91 So. 610.

█ It is an elementary principle that intention must be found in the instrument itself; that, where the language of the instrument is unambiguous and perfectly clear, there is no field for the play of construction; and, if subject to construction, a court can best ascertain the true intent and meaning of the testator by putting itself as far as may be, in his place, and reading all the directions of his will in the light of his environment at the time it was made. Fowlkes v. Clay, 205 Ala. 523, 88 So. 651; 26 R. C. L. p. 1252. And, under the office of construction, courts cannot make wills for testators. Crawford v. Carlisle, 206 Ala. 379, 89 So. 565; Henderson v. Henderson, 210 Ala. 73, 97 So. 353; Pearce v. Pearce, 199 Ala. 491, 74 So. 952. It is further established that a will must be administered in accordance with the directions of the testator, and any unwarranted departure therefrom would establish an unwholesome precedent. The trustee's authority and power to sell is governed by the terms of the

powers contained in the will, and it cannot sell in any other or different manner. 26 R. C. L. p. 1289; Perry on Trusts (7th Ed.) par. 783, p. 1334.

The pleadings and evidence in this case show that the homestead of testator consisted of a large and beautiful home, located on lots 3 and 4 of block 15, on Cloverdale road. The evidence and the map show that Mrs. Sheehan desires the trustee to convey to her parcel A, thus carving out of lot 4 and its back thereof, on which the house in question was placed by mistake, from the lot on which the homestead sits. Under this evidence and pleadings it will not necessarily detract from the beauty and comfort of the home itself, and the remaining grounds on which the original house stands, its approaches, drains, and trees, etc., will be sufficient, and will not detract more than the sum of money required to be paid therefor, added to the corpus and bringing interest, or affording additional income; that is to say, it is shown to be measured in damages as affecting the trust fund which is accordingly compensated, and the homestead for the cestuis que trust is not materially affected, depreciated, or damaged.

The very language of his will is, and he provided, that the trustee could not sell this home place, except by and with the consent of his wife. While this clearly evidences an intent on his part that his homestead be kept intact as such, for the use and occupancy of his family, but that, if circumstances justified or necessitated it, according to his wife's and trustee's judgment, they could in turn sell the homestead. Here, if not absolutely necessary that the wife's mistake be rectified, and if she were a stranger, the broad powers given the trustee, with her consent, authorized a sale of "all or any part thereof" at public or private sale, without order of the court. This is in accord with equitable principles.

Another factor to be considered in arriving at the intent of the testator, generally speaking, is: It is intended that the trust estate be administered impartially for the benefit of all cestuis que trust alike, if they are in the same class as to provision, property, or interest. And it is likewise the rule as stated by Mr. Lewin, as follows:

"A trustee for sale will remember that he is bound by his office to sell the estate under every possible advantage to his cestuis que trust, and in the case of several successive cestuis que trust, with a fair and impartial attention to the interests of all the parties concerned." Lewin on Trusts, vol. 1 (8th Ed.) p. 578.

And it is stated by Mr. Perry that:

"Trustees are bound by their office to sell the estate under every possible advantage for the beneficiaries, and if there are different cestuis que trust, they must act with a fair and impartial attention to the interest of all; * * * or if they contrive to advance the interest of one party at the expense of another,—they will be personally responsible to the injured party for the loss." 2 Perry on Trusts (7th Ed.) § 770, pp. 1320, 1321.

That being true, and no absence of authority, that the language of this will was sufficient to authorize a sale by this trustee of the parcel of the homestead to one of the cestuis que trust for its full market price, and without affecting the comfort or value of the homestead, and price paid, the fact that the sale inured to the benefit of Mrs. Sheehan in obviating her mistake is not necessarily to the detriment of the other cestuis que trust. Her interest in the sale could only affect her power of judgment, election, or consent. The court, under the evidence, can and will act to the best interest of the minor cestuis que trust. The trustee, with Mrs. Sheehan's consent, had the right to sell the properties of the estate, as provided by item 3 of the will, as follows:

"I give, devise and bequeath unto the first National Bank of Montgomery, Alabama, to be by it held in trust for the uses and purposes, and upon the terms and conditions herein stated, to wit:

"(1) Said trustee shall as soon after my death as the law will permit take into its possession and under its control all of said property with full power and authority to sell and dispose of all or any part thereof at private sale without order of court, and upon such terms and conditions as it may deem advisable, except that it shall not have the right to dispose of my homestead on Cloverdale road during the life of my said wife unless she join in a deed thereto. The proceeds from the sale of any of my said property as well as any other funds coming into its hands shall be by said Trustee and reinvested in such securities or other property as its best judgment shall dictate, without legal restrictions, but with the aim of producing a maximum yield commensurate with safety. Said trustee is hereby authorized to execute and deliver all necessary deeds, contracts, and other papers necessary and incident to making a sale of any of said property and to do any and all things which it may deem necessary in the handling and management of said estate and in the investment of said funds.

"(2) The net income from said trust fund shall be available for the maintenance and support of my said wife and our children, and to that end shall be entitled to receive as collected, or at such other times as she may direct, all of the net income from said estate, the same to be expended by her as she may deem proper, either for her own use personally, or for the support and education of our said children, and she shall not be accountable for the expenditure thereof.

"(3) In the event that the income from said trust estate is insufficient to meet the requirements of my said wife and children the trustee shall have the right to distribute to my said wife from time to time a portion of the principal which she may expend as she sees fit, but any portion of the principal expended for the specific use of any child shall be a charge against such child in the final settlement."

Such are its full powers and such are the limitations. It is true this is not, strictly speaking, a bill or petition to sell property for reinvestment, or for the betterment of the estate, or to pay debts. It is in the nature of that for reinvestment for a stated reason, which justified the trial court, within the power of authority of the will and in consonance with a procedure in equity, to permit and authorize a sale thereof. The facts are clearly stated in the petition, and the relief sought was within the power of a court of equity; the evidence supports the decree.

This is the necessary result when the intent of testator is gathered from the four corners of the will, and the assent of Mrs. Sheehan, when given as indicated, and that for the minors in a court of equity within its enlarged powers. Subsection 1 of item 3 gives the power of sale of all or "of any part of said property," as we have indicated; subsection 2 disposes of the "net income" for the "maintenance and support" of "my said wife and our children" at such time or "times as she may direct," to be "expended by her [the wife] as she may deem proper, *either for her own use personally,* or for the support and education of our said children," and without accountability. In subsection 3 it is provided to supplement the income to "meet the requirements of * * * the wife and children," and the trustee is given the "right to distribute to" the wife "a portion of the principal which she may expend as she sees fit." And, lastly, testator expressed his intention as to the wife in subsection 4 of item 3, as hereinabove quoted. This power of appointment or of nomination is recognized in this jurisdiction and was recently discussed in Powell v. Pearson, ante, p. 247, 125 So. 39.

It shows the supreme confidence and concern the testator had for his wife, confers large powers, as those of consent for sale of the homestead, or a part thereof, expenditures as she may deem proper from the income and that of making known (if not declaring) its insufficiency, and the right of demand for distribution to her of a portion or portions of the principal or corpus, from time to time when there is "insufficiency" of "the income" to "meet the requirements of my said wife and children," and to expend "as she sees fit." This last power of expenditure—as she sees fit to expend a "portion of the prin-

cipal"—is broader than that of the net income; "as she may deem proper, either for her own use personally or for the support and education of our said children." Viewing the situation from the standpoint of testator when he made the will, as shown by the record, we do not hesitate to say the proposed action and decree are within the powers of the trustee, and do no wrong or injustice to any of the cestuis que trust. Petitioner was trying to supplement the income from her husband's property, that she may not be forced to depreciate "the principal," as she was authorized to do by subsection 3 of item 3.

This is sufficient to indicate that the trial court, in the decree rendered, was within the pleading and justified by the evidence, and was free from error.

Affirmed.

ANDERSON, C. J., and SAYRE and BROWN, JJ., concur.