## THE DECISIONS

OF

# THE SUPREME COURT OF ALABAMA:

CONTINUATION OF

## JUNE TERM, 1837.

### GREGG, et al. *vs* BETHEA.

1. Where one, of several plaintiffs in error, dies before errors assigned, the suit does not abate. The suggestion of the death is all that is required, and the case may proceed in the name of the survivors.

2. The writ of error is to be considered a new action, and fully within the letter and spirit of the statute passed in eighteen hundred and twenty-four.*

3. *Semble*—At common law, a writ of error is a *supersedeas*, which continues until the court is apprised of the abatement of the writ, by *scire facias;* and therefore, when one of several plaintiffs in error, died before errors assigned, the defendant in error was obliged to sue out a *scire facias quare execu-*

---

*Aikin's Digest, 259.

*tionem non,* against the survivors, to revive the judgment, before he could sue out execution.

4. The County courts of this State are invested with plenary jurisdiction, in all matters concerning the estates of infants; and therefore, a claim for the maintenance of the infant, is properly brought, when presented to that tribunal.

5. As a general rule, where a legacy is given, *to be paid* or *payable* at a particular time, or when the legatee shall attain a particular age, the legacy is vested, and should he die before the happening of the event, the interest in the legacy will pass to his personal representative—the condition relating only to the time of payment, and the legacy being vested by the express terms of the gift.

6. But whenever time is annexed to the payment of a legacy, and there is no express gift of the legacy, the legacy does not vest until the happening of the event. In such cases, however, if from other parts of the will, it can be gathered, that the testator intended that the legacy should vest immediately, such intention will control the general rule : for the rule itself was devised as a mean of expounding the will, and must of course yield to the expressed intention of the testator.

7. Therefore, the following words, " I will and bequeath unto my beloved grandson, G. H. S, three negro girls, viz:— Nance, Betsy and Susannah, &c.—to be given to him at the age of 21 years, by my executor, &c.—provided, that should my said grand-son die, leaving no widow or legally begotten children, then said negro girls, with their increase, shall return to my three daughters, M. A." &c.—were held to vest the legacy bequeathed, immediately, and the remainder supported as an executory devise, was held to be limited after the creation of the fee, and the legatee entitled to the annual product of the slaves.

8. Where the probate of the will had taken place in eighteen hundred and twenty-one, and no application was made for

setting apart a sum of money for the maintenance of an infant legatee of a vested legacy, until eighteen hundred and thirty-five; and the executor being cited to shew cause why a sum should not be so set apart, failed to appear—it was inferred that the estate was settled.

9. Where a guardian makes application, in his own name, to have a sum of money set apart for the maintenance of an infant legatee of a vested legacy, and a judgment is obtained against the executor—the judgment will be reversed; as the application should have been in the name of the ward, and the judgment rendered in his favor.

Error to the Circuit court of Wilcox county.

The defendant in error, guardian of George H. Strother, presented his application to the County court of Wilcox county, praying that a citation might issue to Robert H. Gregg, one of the plaintiffs in error, executor of the last will and testament of Lucy Strother, dec'd, requiring him to shew cause, on a day certain, why an order should not be made, making an appropriation to said defendant in error, guardian of the said George H. Strother, for raising said George H. Strother, who was entitled to a legacy under the will of said Lucy Strother:—And thereupon, it was ordered that the application should be granted.

And on the twenty-fourth day of October, eighteen hundred and thirty-five, a precept issued to the sheriff of Wilcox, commanding him to notify said Robert H. Gregg, executor of the last will and testament of Lucy Strother, deceased, to be and appear at the next term of the Orphans' court, to be holden for Wilcox county, at the court-house thereof, on the third Monday in November then next, and shew cause, if any he could, why an appropriation should not be made to David Bethea, guardian for George H. Strother, a minor heir of said Lucy Strother, deceased, for raising, feeding and clothing, and educating the said mi-

nor.   Therein not to fail, and to have then there, the precept, with his indorsement thereon, &c.   This precept was returned, executed.

And at December term of the same Court, it was ordered that an *alias* precept issue to said Robert H. Gregg, executor, &c. to appear at the next term of the court, and shew cause why the appropriation to said defendant in error, guardian, &c. of said George H. Strother, a minor heir of said decedent, for raising and supporting said minor, should not be made; and an *alias* precept accordingly issued to the sheriff as aforesaid, commanding him to notify said Robert H. Gregg, executor, &c. to appear before the honorable judge of the Orphans' court, at a court to be held for the county of Wilcox, at the court-house thereof, on the third Monday in January next ensuing, then and there to shew cause, &c., and therein not to fail, but to bring the precept, with an indorsement thereon; which was accordingly done, and the precept returned, executed, &c.

And at the January term of the same court, eighteen hundred and thirty-six, the notice issued from the last term of the court, having been returned executed; and the said Robert H. Gregg, the executor, not appearing, it was, on application of said David Bethea, guardian for George H. Strother, a minor heir of the estate of Lucy Strother, deceased, ordered, that an allowance should be made David Bethea, guardian of George H. Strother, minor as aforesaid, for the sum of eight hundred and twenty-three dollars and thirty-seven and a half cents, and that he should recover of and from Robert H. Gregg, executor of the last will and testament of Lucy Strother, deceased, the amount of the hire of certain negroes, named Betty, Nancy and Susannah, amounting, on the last day of December, eighteen hundred and thirty-five, to eight hundred and twenty-three dollars and thirty-seven and a half cents, for boarding, clothing,

and schooling said minor, for which execution might issue, &c.

The will of said Lucy Strother, on which the action was brought, and the judgment rendered, contained the following provisions:

1st. It was the will and desire of the testator, after her decease, to be decently interred.

2d. It was her will and desire that all her just debts should be paid, and that her negroes therein not specially bequeathed, should remain on her plantation, under the direction of her executor and executrix, until her just debts were fully satisfied.

3d. She willed and bequeathed unto her beloved grand-son, George H. Strother, three negro girls, to-wit, Nance, Betty and Susannah, also one bed and two cows and calves, to be given to him at the age of twenty-one years, by her executor and executrix thereafter named; provided, that should her said grandson die, leaving no widow or legally begotten children, then the said negro girls, with their increase, should return to her three daughters, Mary Ann, Elizabeth H. and Harriet P. or their legal representatives.

4th. She willed and bequeathed unto her beloved daughters, Mary Ann and Harriet P., each one negro woman, at their own election, giving first choice to her daughter Mary Ann, and said negroes to be valued and considered as a part of their portion ; provided, if there was a crop on hand, at her death, said negroes should be kept together until the ensuing January. Also, she willed and bequeathed unto her two daughters, Mary Ann and Harriet P., all her household and kitchen furniture, except so much as was otherwise willed, to be equally divided between them at her death.

5th. She willed and bequeathed unto her beloved grand-daughter, Lucy Ann Gregg, one negro girl named Beck, to be valued and considered so much of her daughter Elizabeth H. Gregg's portion.

6th. She willed and bequeathed unto her three daughters, Mary Ann, Elizabeth and Harriet P., all the rest, residue, and remainder of her estate, both real and personal, not otherwise devised, to be given as soon as her debts were paid.

7th. It was her will and desire, that Robert H. Gregg, Mary Ann Strother, and Harriet P. Strother, should be, and were nominated and appointed her executor and executrixes, of that her last will and testament, in witness, &c.

The will was proved by one of the subscribing witnesses, before the judge of the Orphans' court of Wilcox county, in open court, on the first day of November, eighteen hundred and twenty-one; and to the will there was a copy of the returns of the executor, containing an abstract of his account, concerning the hire of the negroes, Nance, Betty and Susannah, from eighteen hundred and twenty-two, to eighteen hundred and thirty-five, inclusive; by which it appeared, there was in the hands of the executor, in eighteen hundred and thirty-five, the sum of eight hundred and twenty-three dollars and thirty-seven and a half cents.

On the sixteenth day of March, eighteen hundred and thirty-six, Robert H. Gregg and Strother R. Gregg, the plaintiffs in error, entered into bond payable to defendant in error, conditioned to prosecute a writ of error, which they had sued out, returnable to the term of the Circuit court, to be held for the county of Wilcox, on the seventh Monday after the fourth Monday of March, *instanter*, to reverse the judgment given against Robert H. Gregg, executor, at the January term, eighteen hundred and thirty-six, of the Orphans' court for said county, in favor of the defendant in error, &c.

And at the spring term, eighteen hundred and thirty-six, of the Circuit court of said county, the plaintiff assigned for error—

1. That the County court erred, in giving judgment against the plaintiff in error, before he settled his accounts, as executor of Lucy Strother, deceased, and before he was allowed expenses and commissions on the assets.

2. That it was error in the County court to render judgment against the executor, in favor of the guardian, on a petition for an allowance for support of his ward, when the question of allowance was the only question then before the court.

3. The County court erred in giving judgment for the whole amount of the inventory returned by the executor, before the amount of good or bad debts was ascertained, or debts due for negro hire, not then due and collected.

4. It was error to give judgment before the executor was cited to settle his accounts.

5. The court erred in giving judgment against the executor, who is not liable under the will to account, until the ward arrives at the age of twenty-one years, as would appear by reference to the copy of the will, in the record.

To this assignment of errors in the Circuit court, there appears to have been a plea or answer, filed by the defendant in error, which stated, in relation to the first specification of the assignment:

That it was the duty of the executor to settle his account annually, and the court would presume he did so. The County court only allowed the principal of the hire, leaving interest on the amounts from eighteen hundred and twenty-two, which was sufficient for commissions, &c.—besides, the court had a right to make the allowance: the executor had more property in his hands belonging to the minor, as appears by the will.

2. It was not error for the County court to give judgment against the executor, after having examined the accounts of the guardian, and allowing them. The

executor was notified of the application to make the allowance to the guardian out of the property in his hands, and if the court was satisfied with the guardian's accounts, and allowed them, which was the fact— it had the right to give the judgment against the executor, he failing to bring the money into court : there was no other way to compel him but to give the judgment against him as executor, which was done—he having notice of the application, and failing to appear.

3. The account of hire was returned into court, and the court had a right to make the allowance :— besides, there was other property, and the court could have gone further, if the guardian's claims had been established for more than it was.

4. The executor's duty was to settle his accounts annually ; he was cited to do so ; he made returns, but returned into court no money.

5. The court did not err in giving the judgment before the minor came to the age of twenty-one.— The minor had no other means of support; and it would be an extremely hard case were a construction given to the will, which would let the executor hold over all the legacy of the minor, and the proceeds arising from the same, &c.

And at the spring term of the Circuit court, eighteen hundred and thirty-six, came the parties, and all and singular the records being seen and inspected by the court, and after a full hearing of the cause, and it appearing to the satisfactiion of the court, there was no error—It was therefore considered by the court, that the judgment of the County court should be in all things affirmed, and that the defendant in error should recover of the plaintiff in error, and Strother R. Gregg, his security for the writ of error, the sum of eight hundred and twenty-three dollars and thirty seven and a half cents, the amonnt of the judgment of the court below, and the costs accrued in this court, &c.

The case was then brought into this court by writ of error, and the plaintiffs assigned for error, that the Circuit court did not sustain the assignment of error in that court, but overruled the same.

2. That the Orphans' court had no jurisdiction of the cause.

The defendant in error denied that there was error in the record.

And at the present term of this court, the death of Strother R. Gregg, one of the plaintiffs in error, was suggested to the Court, and a motion made to continue the case, for the purpose of calling in the personal representatives of said plaintiff, deceased, to make them, when known, parties to this suit.

*Bedford*, for plaintiffs in error.
*Porter*, contra.

GOLDTHWAITE, J.—The death of Strother R. Gregg, one of the plaintiffs in error, is suggested, and it is now moved to continue the case, in order to make his personal representatives parties to this suit, when known.

At common law, a writ of error abated, where one of several plaintiffs in error died *before* errors assigned; in which case, the defendant in error would have had to sue out a *scire facias quare executionem non*, against the survivors, to revive the judgment, before he could have sued out execution; as a writ of error is a supersedeas, which continues until the court is apprised of the abatement of the writ, by a *scire facias*,—*Spencer vs Rutland;** *Howard vs Pitt*.† But if he die *after*, the writ did not abate, but the defendant might join in error, and proceed to

---

*1 Salk, 231.     †1 Ld, Raym, 244.
6p          3

have the judgment affirmed, if not erroneous, and where there was only one plaintiff in error, might afterwards revive it, against his executors.*

The present suit originated in the County court, and the deceased party became a party to the judgment rendered in the Circuit court, in consequence of his being a surety in the writ of error bond; but this circumstance does not place him in a situation different from that which he would have occupied, had he been a party to the original judgment;—having once become associated with his co-plaintiff in error by the judgment below, they can only be disconnected in the same manner as all other co-plaintiffs in error.    It was thought, that if the motion had been with reference to a co-plaintiff, who was the party against whom the original judgment had been rendered, in the County court, some difficulty would be presented, as, in case of reversal, the case might have to be remanded for further proceedings, in another court, where the personal representatives of the deceased co-plaintiff in error would necessarily have to be made parties. But it is not considered, that even in that case, would it be necessary to call in the personal representative into this court, as our statute† provides, that " where there are two or more plaintiffs or defendants to any suit or suits, in any court of this State, and one or more of them die, if the cause of such action shall survive to the surviving plaintiff or plaintiffs, or against the surviving defendant or defendants, the writ or action shall not be thereby abated; but such death being suggested upon the record, the action shall proceed at the suit of the surviving plaintiff or plaintiffs, against the surviving defendant or defendants."

In this case, the writ of error is sued out by both plaintiffs in error, and it is to be considered as a new

---

*2 Wms. Saund. 101, note 10 and p.          †Aikin's Dig 259

action :* and therefore, fully within the letter and spirit of the act before recited. The suggestion of the death being made in the record, is all which is required, and the case must proceed in the name of the survivor. The motion is, therefore, denied.

And the case was then heard; upon its merits, and the opinion of the court delivered by

ORMOND, J.—This was a proceeding instituted in the County court of Wilcox, by the defendant, as guardian of George H. Strother, against Robert H. Gregg, as executor of the last will of Lucy Strother, to have a sum of money set apart for the maintenance of the infant. The County court decreed in favor of the guardian, from which judgment, the plaintiffs in error prosecuted a writ of error to the Circuit court of Wilcox county,—where the judgment of the County court was affirmed. From that judgment a writ of error has been taken to this court.

The errors assigned here are the same assigned in the Circuit court, and in addition thereto, that the County court had no jurisdiction of the case. The assignments of error will be taken up in their natural order, without regard to their position on the record. And, first, had the County Court jurisdiction?

In England, all power over this subject is vested in the Chancellor :—he is the guardian, in effect of all the infants in the realm; but in this State, the Judge of the County court is invested with ample power to determine almost all questions which can arise, in which a minor is concerned.

By an act, passed in eighteen hundred and seven,† it is provided, that the County court shall have authority from time to time, to take cognizance of all mat-

---

*2 Wms. Saund. 101, note 1, g.        †Aikin's Digest, 250.

ters concerning orphans and their estates, &c. A more plenary jurisdiction than this act confers, over the subject matter in question, can not well be conceived, unless it can be shewn, that the question of setting apart a portion of the estate of the orphan, for his maintenance, is not a matter appertaining to his estate. But, independent of this general grant of power, the legislature, by an act passed in eighteen hundred and six,* enacted, that if the personal estate, and rents and profits of the real estate, be insufficient for the maintenance and education of the ward, the Orphans' court may order a sale of the lands, &c. Here the power is not only expressly given, to appropriate the profits of the real and personal estate for the maintenance of the ward ; but the high and delicate trust is conferred on the Orphans' court, to sell for that purpose, the lands of infants,—a power which is rarely, if ever, exercised by the British Chancellor. There doubtless, may be cases, in which, from the peculiar nature of the trust, the County court could not act, and application would have to be made to the Chancellor. This is not one of those cases.

The next question which arises, is as to the legal effect of the bequest, under which the orphan claims. It is insisted, that the legacy does not vest until he attains the age of twenty-one years,—and that, therefore, he is not entitled to the profits of the estate during minority. The clause of the will reads thus :

"I will and bequeath unto my beloved grandson, George H. Strother, three negro girls, viz: Nance, Betsy and Susannah ; also one bed, and two cows and calves: to be given to him at the age of twenty-one years, by my executor, and executors, hereafter to be named : Provided, that, should my said grandson die, leaving no widow, or legally begotten children, then said

---

*Aikin's Digest, 221,

negro girls, with their increase, shall return to my three daughters, Mary Ann," &c.

The general rule, applicable to this class of cases, is, that where a legacy is given *to be paid,* or *payable* at a particular time, or when the legatee shall attain a particular age, the legacy is vested—and, should he die before the happening of the event, the interest in the legacy will pass to his personal representatives. The condition which is annexed, relates only to the time of payment, but the legacy is vested by the express terms of the gift. Wherever the time is annexed to the payment of the legacy and there is no express gift of the legacy, the legacy does not vest, until the happening of the event; but even in such cases, if, from other parts of the will, it can be gathered, that the testator intended that the legacy should vest immediately, such intention will control the general rule: for the rule itself, has been devised as a mean of expounding the will, and must, of course, yield, to the expressed intention of the testator. So in this case, were it otherwise doubtful when this legacy should vest, other parts of the will explain the intention of the testator fully: for she provides, by a previous part of the will, that her negroes, not specially bequeathed, shall remain on the plantation, until her debts are fully satisfied,—thereby shewing, very conclusively, that she did not intend the product of the labor of the negroes in question, to fall into her estate, during the minority of her grandson.*

It is insisted, that the remainder in this bequest will prevent its vesting, so as to entitle the legatee to the annual product of the slaves; but it is not perceived how it can have that effect. The remainder can only be supported as an executory devise, and that may be limited, as it is in this case, after the creation of a

---

* 1 Vesey sen. 217; 11 Vesey 498; 8 Vesey, jun. 557; 2 Salk. 415; 3 Porter, 350.

fee. It may be added, that this species of remainder supposes that the particular estate is vested, as it is in this case.

A much more difficult question is presented by the first assignment of errors,—which insists that the Court erred in giving judgment against the executor, before final settlement of the estate. By the act of eighteen hundred and twelve,* it is provided that any person entitled to a legacy or estate, by will, may at any time after eighteen months from granting letters of administration, apply, by petition, to the County court, for distribution, &c.

The probate of the will, in this case, was in eighteen hundred and twenty-one : this application was made in eighteen hundred and thirty-five. The executor files his account of the hire of the negroes of the infant, and on being cited to appear at the Orphans court, to shew cause, against setting this money apart for the maintenance of the infant, he does not appear, and a decree is made against him. After such a lapse of time, and without any defence on his part, the inference is irresistible, that the estate has been settled.

In all cases, when, after the lapse of eighteen months, an application is made for distribution by the legatee or distributee, it devolves on the executor to shew that the distribution should not be made. He has possession of the estate, knows its condition, and must be held to show the reasons why distribution should not be made. Our determination, in this case, is founded on the lapse of time, and his failure to shew cause against it, which is equivalent to an admission that the estate is settled.

The third assignment of error, maintains that there is error in giving judgment against the executor, for

---

* Aikin's Digest, 155.

the amount of the inventory, without allowing for bad debts. On reference to the inventory, it appears to be simply an account for the hire of negroes, from the year eighteen hundred and twenty-two, to the year eighteen hundred and thirty-five. Credits are claimed in this account for expenses. It cannot be presumed, when an account of this kind is filed as the basis of a settlement, that any part of the claims were bad, in the absence of any shewing to that effect. It must always be taken most strongly against the party making it.

It is also insisted in argument, that commissions should have been allowed the executor, for his trouble, &c. The answer to this is, that none were claimed.

But it was error, for the guardian to make the application in his own name, or for the Court to render judgment in his favor. The application should have been in the name of the ward, and judgment in his favor—as was decided by this court, at its last term, in the case of *Mason vs McLeod*,[*] and again, at this term, in the case of *Sutherland vs Goff*.[†] For this cause the judgment must be reversed.

---

*5 Porter, 223.                           † Ibid. 508