# Pearce *v.* Pearce, *et al.*

### Bill to Construe Will.

#### (Decided April 12, 1917.  74 South. 952.)

1. **Wills; Construction; Intent of Testator.**—Intent being the primary rule of construction, testator's manifest scheme must be gathered from whole instrument; conflicting clauses being reconciled so as to make each operative.

2. **Estates; Words and Phrases.**—"Estate" is a word capable of the greatest extension, and comprehends every species of property describing both the corpus and extent of the interest.

3. **Wills; Disposition of Property; Restrictions; Powers of Testator.**—A testator has the right to dispose of his entire estate with such restrictions and limitations, not repugnant to established law, as he sees fit.

4. **Wills; Construction; Vested and Contingent Estates.**—The law favors the construction by which the estate is regarded as vested rather than contingent, or by which it will become vested at the earliest moment, and this is usually at death of testator.

5. **Wills; Construction; Intention of Testator.**—Where intention of testator to create contingent legacy or devise is clear, the rule that all estates, except estates in the devise of which a condition precedent is so clearly expressed that courts cannot treat them as vested, will be held vested, has no application.

6. **Trusts; Use of Trust Fund; Support of Infant; Powers of Court.**—Where a will makes no provision for support of infant beneficiaries or for enjoyment of any part of estate given them until they reach majority, the chancery court will grant permission to use income where a necessitous condition of infants warrants.

7. **Wills; Inconsistent Provisions.**—To effectuate intention of testator, a general residuary clause will be made to yield to a specific inconsistent provision found elsewhere.

8. **Wills; Construction; "Remainder of My Estate;" Intent.**—Under a will providing for (1) payment of all just debts; (2) bequest to a son of $5,000; (3) bequest to a grandson of a special fund for his education; (4) disposing of the "remainder of my estate," etc.—intention of testator was to dispose of residue of estate after payment of items 1 and 2, and making provision for item 3.

9. **Wills; Construction; Qualified Estate.**—Under will providing that in event of death of testator's grandson without issue before settlement of tes-

[Pearce v. Pearce, et al.]

tator's estate his interest shall go to another, the estate is qualified, being subject to defeat by happening of contingency.

10. Wills; Estate in Specific Terms; Subsequent Clause or Words; Effect.—Where an estate is given in one clause by clear and specific terms, it cannot be taken away or diminished by raising a doubt upon the extent and meaning of a subsequent clause, nor by subsequent words less clear and decisive.

11. Wills; Estates; Time of Vesting; "Settlement."—Residuary clause of will provided that M. was to have one-half of remainder, C. one-fourth after payment of bequests herein made, which may be paid him by executor upon his reaching age of 21 or 25, and J. one-fourth. The following item provided that in event of deaths of C. and J. before "settlement" of estate interest should vest as therein indicated. A subsequent item provided that the executor, after bequests as hereinbefore stated have been made, should keep estates of C. and J. together until they were 25. Twelve months after granting letters testamentary, at which time C. was 17 and J. 10 years old, the liabilities of the estate were $59,000, specific legacies not over $10,000, while the assets were $145,000. Held, that as debts of testator had been ascertained and settled and payment of specific legacies provided for, the time of "settlement" had been reached, and that estates of M., C., and J. became vested and absolute at this time, settlement not referring to final distribution.

12. Perpetuities; Nature and Extent of Limitations.—Residuary clause of will provided that M. was to have one-half of remainder, and C. and J., grandsons, each one-fourth. A subsequent clause provided that the executor should keep estates of C. and J. together until they were 25. Held, that as J. was less than 10 years old at death of testator, and the lives being in being at date of conveyance, the estate of J. in real estate vested absolutely on death of testator in view of Code 1907, section 3417, providing that conveyances to other than wife and children, or children only, cannot extend beyond three lives in being at date of conveyances, and 10 years thereafter.

13. Perpetuities; Accumulations; Trusts in Personalty.—Under Code 1907, section 3410, providing that no trust for purpose of accumulation only can have any effect for a longer term than 10 years, except when for the benefit of a minor when it may continue till majority, a will creating a trust in personalty for a minor for more than 10 years and until he is 25 years old is valid only until he reaches majority.

14. Trusts; Wills; Suit for Construction; Equity Jurisdiction; Regulation by Court.—When jurisdiction of court of equity attaches on filing of bill for construction of will, infants become wards of court, and trustee acting for such wards is likewise, notwithstanding discretionary powers given by will, subject to orders of court.

15. Wills; Construction; Powers of Trustee.—Courts of equity will not favor construction which confers upon testamentary trustee absolute and uncontrollable powers.

16. Executors and Administrators; Power to Continue Business of Testator.—Discretionary powers vested in executor under will to sell and exchange property did not confer authority to continue a general mercantile business as testator had done.

17. Executors and Administrators; Trusts; Power of Executor.—A trust is not transmitted to an executor so as to enable him to carry on a business,

[Pearce v. Pearce, et al.]

unless he has express authority under will, or is so empowered to act by a court of chancery.

APPEAL from Marion Chancery Court.

Heard before Hon. JAMES E. HORTON, JR.

Bill by Marvin Pearce, as executor, against Clovis Pearce and others to construe a will. From a decree of the chancellor, this appeal is prosecuted by the proponent. Affirmed.

The will is as follows:

Item 1. Payment of all just debts.

Item 2. Bequest to Jim Pearce, Jr., of $5,000 to be made when he is 21 years old.

Item 3. I will and bequeath to my grandson Clovis Pearce $5,000 as a special fund for his education. If I complete his education before my death, this sum is not to be paid to him. I will hereafter keep an account against my grandson Clovis, charging to him such items as I may deem proper, to be charged against his educational fund, and if I should die before his education is completed, my executor is authorized and directed to spend any balance of said sum upon the education of my grandson Clovis. No part of this sum is to be charged against my grandson Clovis as a part of his distributive share in my estate. If, for any reason, my grandson Clovis does not exhaust said sum, the balance so unexpended shall be converted to my general estate. My executor is directed to pay either directly to my grandson Clovis or to such person as he may determine such reasonable amount for each year's expenses, as he deems fit, provided said payment shall not, in the aggregate, exceed the amount of $5,000, inclusive of the amount charged by me against his educational fund, prior to my death.

Item 4. I will and bequeath to my son Marvin Pearce one-half of the remainder of my estate, both personal and real. I will and bequeath to my grandson Clovis one-fourth of my estate, left after paying the bequest herein made to my grandson Jim, Jr., and the educational fund provided for my grandson Clovis, and in addition to said one-fourth, I will and bequeath to my grandson Clovis $5,000 to be charged against the interest of my grandson Joe, as herein provided. My executor may pay this $5,000 to Clovis upon his reaching the age of 21 years, if in his judgment, his habits are good, and his judgment sufficient to handle said sum of money. If he thinks it is best for the said Clovis, on account of his habits, to retain said money until he is

25 years of age, he is authorized to do so.  I will and bequeath to my grandson .Joe one-fourth of my estate left after deducting the special bequests made to my grandson Jim, Jr., and Clovis Pearce's educational fund.  There is also to be deducted from the one-fourth interest of my grandson Joe the sum of $5,000 which is hereinafter bequeathed to my grandson Clovis.  It is the purpose and intention of this item that my grandson Clovis, in additiona to the educational sum herein provided, shall have $5,000 more, to be deduced from the share of my grandson Joe.

Item 5.  In the event of the death of my grandson Joe, without issue born to him, before the settlement of my estate, I will and bequeath the interest in my estate hereby willed to him, to my grandson Clovis.  In the event of the death of my grandson Clovis, without issue born to him before the settlement of my estate, I will and bequeath the interest willed and bequeathed to him herein to my son Marvin.

Item 6.  I will and direct that my executors hereiafter named and appointed take charge of my entire estate, real, personal and of whatever nature, and reduce the same to cash in such a way, and in such quantity, and on such terms, and at such a time or times, as he in his sound discretion may think to be to the best interest of my estate.

Item 7. Authorizing the sale and exchange of land and the purchase of other land, in the sound discretion of the executor.

8. Authorizing the executor to sell any property in any way as seems to him best, and to execute deeds and other contracts.

Item 9. Exempting the executor from making reports to courts, and to do the things herein willed, without the order or direction of any court.

10. Exempting from bond.

11. My executor is hereby directed and required to keep the part of the estate of my grandson Clovis together, until he is 25 years old, and my grandson Joe's part of the estate together until he is 25 years old.  After such bequests as hereinbefore stated in this, my last will and testament, have been made.

12. Directing the executor to handle Clovis and Joe Pearce's part of the estate mentioned at the age of 25, should either Clovis or Joe become incompetent from insanity, or any other cause, and that they have such a part of their estate from time to time as may be necessary, for their comfortable sustenance.

13. Appointing Marvin Pearce executor, and in case of his incompetency, appointing Largus M. Pearce to act as executor for my grandsons Clovis and Joe.

14. Fixing compensation of executor on all receipts and all disbursements.

E. B. & K. V. FITE, A. F. FITE and W. C. DAVIS for appellant. CABANISS & BOWIE and GEORGE E. BUSH for appellee.

THOMAS, J.—The appellant, Marvin Pearce, as executor and as a legatee and devisee under the will of James P. Pearce, deceased, asks a construction of this will.

The averments of the bill as to the ages of the minor grandsons of the testator, who are made beneficiaries, are: That Jim Pearce, Jr., was over the age of 14 and under the age of 21; that Clovis Pearce was 17 years of age; and that Joe Pearce was 10 years of age on March 7, 1916, when the amendment to the bill was filed. The date of the will was February 11, 1913. Letters testamentary to plaintiff thereunder were issued March 30, 1915, said will having been theretofore, to-wit, on March 29, 1915, duly proved in the probate court of Marion county. The estate is large and complicated. A construction of the will is necessary, not only for the guidance of the personal representative, but to determine the respective beneficiaries.

(1) The manifest scheme of the testator must be gathered from the whole instrument, his intent being the primary rule of its interpretation.—*Dickson v. Dickson*, 178 Ala. 117, 59 South. 58; *O'Connell v. O'Connell*, 196 Ala. 224, 72 South. 81. Any apparently conflicting clauses should be reconciled so as to make each operative. We have recently collected the authorities and reaffirmed some of the cardinal rules of testamentary construction, in *Ralls, Adm'r, v. Johnson*, 200 Ala,. 75 South. 926. It will not be necessary to repeat them here. The intention of the testator was to make disposition of a large estate, consisting of personal, real, and mixed properties, between his son, Marvin, who was of full age, and his minor grandsons, Joe, Clovis and Jim Pearce, Jr.

(2-5) No question can arise in the course of legal inquiry, perhaps, that is more doubtful in its nature, or less referable to fixed rules, than whether the words of a devise or bequest constitute a vested or a contingent estate.—Code 1907, §§ 3398-3401.

[Pearce v. Pearce, et al.]

"Estate" is a word capable of the greater extension, and comprehends every species of property, real and personal. It describes both the corpus and the extent of the interest.—*Deering v. Tucker*, 55 Me. 284; *Hunter v. Husted*, Busb. Eq. 141; *Godfrey v. Humphrey*, 18 Pick. (Mass.) 539, 29 Am. Dec. 621. A testator has the right to dispose of his entire estate with such restricitons and limitations, not repugnant to established law, as he sees fit.—Code 1907, §§ 3416, 3417; *Broadway Nat. Bank v. Adams*, 133 Mass. 170, 43 Am. Rep. 504. The law favors the construction by which the estate is regarded as vested rather than contingent, or by which it will become vested at the earliest moment; and this time is usually at the death of the testator. In *Duffield's Case*, 1 D. & C. 311, the Chief Justice states, as the rule for the guidance of that court, that: "All estates are to be holden to be vested, except estates in the devise of which a condition precedent is so clearly expressed that the courts cannot treat them as vested without deciding in direct opposition to the terms of the will."

This ancient rule has been generally applied when the intention of the testator is obscure or doubtful, and has no application when the intention to create a contingent legacy or devise is clear. In·*Phinizy v. Foster*, 90 Ala. 262, 7 South. 836, the pivotal question was whether the estate in remainder created by the will vested at the death of the testator or was contingent. The distinguishing characteristics of the two estates were thus defined: "A remainder is said to be vested, when the estate passes out of the grantor at the creation of the particular estate, and vests in the grantee during its continuance, or eo instanti that it determines—when a present interest passes to a certain and definite person, to be enjoyed in futuro; and it is said to be contingent, when the estate is limited, either to a dubious and uncertain person, or upon the happening of a dubious or uncertain event—uncertainty of the right of enjoyment, as distinguished from the uncertainty of possession."

In *Duncan v. De Yampert*, 182 Ala. 528, 62 South. 673, it is declared that the intent to postpone the vesting of an estate must be clear, and not arise from mere inference or construction.—*Crawford v. Engram*, 153 Ala. 420, 45 South. 584. This rule is based on that announced in *Doe v. Considine*, 6 Wall. 476, 18 L. Ed. 869, to the effect that: "The law will not construe a limitation in a will into an executory devise when it can take effect

as a remainder, nor a remainder to be contingent when it can be taken to be vested."

There is a class of cases in which remainders are regarded as vested, though all who may take are not ascertained, or in being, and cannot be, until the happening of some future event; as where there is a devise of a remainder to a class of which each member is equally the object of testator's bounty, as to the children of a person, some of whom are living at the testator's death.—2 Wash. Real Property '(5th Ed.) § 1545; *Smaw v. Young*, 109 Ala. 528, 20 South. 470; *Acree v. Dabney*, 133 Ala. 437, 32 South. 127; *Reynolds v. Love*, 191 Ala. 218, 68 South. 27. It is further well established, and is consistent with the vesting of the estate at the death of the testator, that the class may open to let in after-born children.—2 Jar. Wills (6th Am. Ed.) p. 1011; *Inge v. Jones*, 109 Ala. 178, 19 South. 435; *Duncan v. De Yampert, supra; Blakeney v. DuBose*, 167 Ala. 627, 52 South. 746.

There is no question that a testator may fix the time of the payment of a legacy in the future, as on the attaining of majority on the part of the legatee (Thomp. Wills, §§ 253, 394; *Anderson v. Hendrickson*, 5 N. J. Eq. 106; *Mendel v. Levis*, 40 Misc. Rep. 271, 81 N. Y. Supp. 965), or on the date of a marriage (*Overton v. Davy*, 20 Mo. 273), or on the death of a designated person (*Griswold v. Heard*, 2 Gray [Mass.] 322), or at any other designated time, provided it is not beyond the period allowed by the statute (*Claflin v. Claflin*, 149 Mass. 19, 20 N. E. 454, 3 L. R. A. 370, 14 Am. St. Rep. 393; Code 1907, §§ 3416, 3417). In Hawkins on Wills (225) and Thompson's Wills (section 253) it is pointed out that when the gift and the time of its payment are distinct, the direction as to the time of payment does not postpone the vesting. Thus, a bequest to A. at 21 and a bequest payable to A. at 21 do not much differ in expression; yet the one is held to be a vested, and the other a contingent gift. For the bequest to A. at 21 is contingent on the fact that A. may not reach that age; and a bequest to A. payable at 21 or to be paid at 21, is vested. If A. dies under the age of 21, such vested gift would be subject to his testamentary disposition, or controlled by the statutes of descent and distribution, as the case may be. See authorities on this question collected by Mr. Williams, in his work on Executors (volume 2, 6th Am. Ed., p. 332 [1230]); also *Crawford v. Engram, supra; Wynne v. Walthall*, 37 Ala. 37; *Marr v. McCullough*, 6 Port. 507; *Gregg v. Bethea*, 6 Port. 9.

(6) Where no provision is made for the support of infant beneficiaries, or for their enjoyment of any portion of the estate given them by a testator or created by a trust, until they reach majority or a designated age, the chancery court, acting in loco parentis or occupying the place of the testator or creator of the trust, will do for the beneficiary what it conceives would have been done by the testator or creator of the trust had he foreseen the needs and necessities of the beneficiary. Such court will grant permission to use currently the income of the trust fund for the completion of the education or for the maintenance of such beneficiary, whose necessitous condition warrants.—*Marsh v. Reed,* 184 Ill. 263, 56 N. E. 306; *Bennett v. Nashville Trust Co.,* 127 Tenn. 126, 153 S. W. 840, 46 L. R. A. (N. S.) 43, Ann. Cas. 1914A, 1045; *Denegre v. Walker,* 214 Ill. 113, 73 N. E. 409, 105 Am. St. Rep. 98, 2 Ann. Cas. 787; *Knorr v. Milliard,* 52 Mich. 542, 18 N. W. 349; *In re. Potts,* 1 Ashm. (Pa.) 340; *In re. New,* 2 Chase (Eng.) 534.

(7, 8) Considering the will in this case both as a whole, and separately by clauses, for an understanding of the testator's intention, item 1, provided for the payment of just debts; item 2 bequeathed to Jim Pearce, Jr., a sum of money that vested in him absolutely on testator's death, except that the time of payment was postponed until he should become 21 years of age; item 3 provided a fund from which Clovis Pearce was to be educated, no part of which might be charged to his distributive share; and the unexpended balance was to be converted into the testator's general estate. The residuary clause, in effect, is to be found in item 4, notwithstanding the relative position of that clause in the instrument. To effectuate the intention of the testator a general residuary clause will be made to yield to a specific inconsistent provision found elsewhere.—1 Shouler on Wills 474; *Ralls, Adm'r, v. Johnson, supra.* By the use of the words disposing of the "remainder of my [testator's] estate, both personal and real," the intention of the testator is shown to have been to dispose of the residue of the estate after paying testator's just debts, and making the gift of $5,000 to Jim Pearce, Jr., together with the provision for the education of Clovis Pearce.

If, then, there is no provision in the will changing the legal effect of the plain words of item 4, it was the intention of the testator to divide this "remainder" of his estate in such manner as to give (1) one-half to a son, Marvin Pearce, and vest it in

him on testator's death; (2) one-fourth (minus $5,000) to a grandson, Joe Pearce; and (3) one-fourth (plus $5,000) to a grandson, Clovis Pearce. That is to say, of the one-half of the remainder of his estate, sought to be given to the two grandsons, it was the declared purpose that Clovis should receive $5,000 more than Joe, and that Marvin's interest was not to be reduced by the $5,000 so given to Clovis in excess of Joe's interest.

(9) The devises and bequest to Joe and Clovis, respectively, were of estates that may be defeated by the provisions of item 5. The provision is as follows: "In the event of the death of my grandson, Joe Pearce, without issue born to him, before the settlement of my estate, I will and bequeath the interest in my estate hereby willed to him to my grandson, Clovis Pearce. In the event of the death of my grandson, Clovis Pearce, without issue born to him, before the settlement of my estate, I will and bequeath the interest willed and bequeathed to him herein, to my son, Marvin Pearce."

Under the foregoing authorities, the estates of Joe Pearce and Clovis Pearce in the residuum were qualified, in that they were subject to be defeated by the happening of the respective contingencies provided for in said item. It was sought to further subject said respective estates by item 11, fixing limitations which, if not offensive to the statute forbidding perpetuities, or to that providing for the creation of trusts for "accumulation only," would postpone the rights of enjoyment to the designated date. It is then necessary that we declare the effect of the provisions of item 11 on the said estates provided for Joe and for Clovis Pearce by items 4 and 5.

(10) In case of irreconcilable repugnancy between two clauses of a will, the latter will usually prevail over the former, as being the last expression of the testator's will. This rule, however, never has application except upon the failure of every attempt to give the whole will such a construction as will render each and every part thereof effective. The result of this rule is that where an estate is given in one clause by clear and specific terms, such interest cannot be taken away or diminished by raising a doubt upon the extent and meaning of a subsequent clause, nor by inference therefrom, nor by subsequent words that are not as clear and decisive as the words of the clause giving the interest or estate in the first instance.—*Ralls, as Adm'r, v. Johnson, supra.* Item 11 does not seek to diminish or change the

[Pearce v. Pearce, et al.]

character of the estates given to Clovis and Joe, otherwise than to declare the dates of the respective payments, as follows: "My executor is hereby directed and required to keep my grandson Clovis' estate together until he is twenty-five years old."

A like provision is made as to Joe Pearce's interest. This intent is further manifest in the provision made for maintenance of these grandsons, in case of disability, by item 12. Items 10 and 13 exempt the executor from liability to make bond, and provide for a successor in the administration of the trust. By item 6 the executor is given large powers in making the estate ready for distribution, as he may think to be "to the best interest" of the estate. In items 7, 8, and 9, a personal trust is reposed in Marvin Pearce, the executor, for the purposes of administration only. Under the trust he is empowered "to sell one tract of land, either surface, mineral or fee simple, and purchase another with the proceeds thereof; to exchange one tract of land, surface, mineral or fee simple, for another, when in his opinion it will benefit the estate as a whole."—Item 7. It is clear by this clause that the intention was to leave to the sound discretion and good sense of the executor named the matter of sales and exchanges of testator's real estate for the benefit of the whole estate. To the end that testator's estate may be "economically and cheaply administered and the best result obtained," said Marvin is fully authorized and empowered to sell any property, of whatever nature, coming into his hands as such executor, at either public or private sale, for cash or on time, or in such other way as may appear to him best, and to execute deeds and other contracts to carry out the same.—Item 8. Thus it is evident that it was the testator's desire to clothe the executor with full power to administer the estate economically, and to the end that a time might be expeditiously reached in the process of administration, consistent with the nature and character of the estate, when all the testator's just debts, and the specific legacies in the will provided, should have been paid; and thus was fixed the time when the interests or estates of Joe and Clovis, given under the residuary clause of the will, were to vest absolutely in them, respectively.

(11) Having taken a comprehensive view of the several provisions of the will, we are now prepared to discuss the meaning of the word "settlement," as it is used in item 5. The residuary clause having disposed of the "remainder" of the estate to testa-

[Pearce v. Pearce, et al.]

tor's son and designated grandsons, it was then provided, by item 5, that in the event of the deaths of said grandsons without issue born to them, "before the settlement" of testator's estate, the particular interest given should finally vest as therein indicated.

We must here given application to the rule favoring the vesting of estates, or estates becoming absolute, at the earliest moment, and that doubtful or obscure clauses will be so construed as to attain that result.—*Montgomery v. Wilson*, 189 Ala. 209, 66 South. 503; *Campbell v. Weakley*, 121 Ala. 64, 25 South. 694. The policy of the statute favors such construction of a devise as will result in vesting the fee if the words of the conveyance be of doubtful import whether a less estate was intended.—Code, § 3396. We are of opinion, and so declare, that it was the intention of the testator, as to the respective interests of Joe and Clovis in said remainder of his estate, that the same should become absolute at that period of the administration when the just debts contracted by testator, together with the specific legacies indicated, should have been paid or provided for. The chancellor fixed this period at 12 months from the grant of letters testamentary. The testimony on which the chancellor acted, now before us, shows that the general liabilities of the estate at the trial of this cause to have been $59,000; that the specific legacies provided are not over $10,000; and that the assets were personal property of the appraised value of $120,000, and real properties, fee, surface, and mineral rights, aggregating, approximately, 25,000 acres—a large part of said lands being owned in fee.

It is clear that the words in question "before the settlement," etc., could have referred to no other date than the expiration of 12 months after the appointment of the executor, or to the termination of a period of time allowed by law or the necessities of the case for getting in the assets, paying the debts, and making provision for the specific legacies. This date may long antedate an actual distribution of the whole estate.

In the opinion of the court in *Calkins v. Smith*, 41 Mich. 409, 1 N. W. 1048, delivered by Mr. Justice Cooley (a case much in point), it is said: "It seems to us manifest that when the testator speaks of his wife's death before his estate is settled, as a contingency upon which the sum of $1,000 given to or settled before marriage upon her is to pass to the residue, he means, not

the settlement in the popular sense of the term, but the stage of proceedings when the funeral expenses, debts and legacies are paid, and when nothing remains but to proceed with the steps for a division of the residue. . That is put beyond doubt by the ninth clause of his will, in which this thousand dollars is named among the sums to be paid before the residue is distributed. At this stage of his proceedings the executor's duties may be said to be closed; nothing remaining to be done by him as such, except the rendering and adjustment of his own account. What further he was to do in respect of the estate was to be done not as executor, but as donee of a power in trust. What strengthens this view is that the testator could have had no good reason for postponing further the final and unconditional vesting of the right to this sum in his wife. The rights of all others were fixed; why should not hers be also? The other proceedings were merely for the partition of common interests, which might be delayed indefinitely at the option of the parties if it seemed desirable that this be done, and perhaps negligently or willfully delayed by the donee of the power. Conditions are not favored in law when they defeat estates, and they should not for a moment be subject to be continued at the option or through the misconduct or neglect of others, where any other conclusion is reasonable."

In *Allen, Trustee, v. Dean, Executor,* 148 Mass. 594, 20 N. E. 314, authority was given the executor "to sell real estate 'as the proper and convenient settlement of the estate may require.' " It was held that this was a limited authority to sell real estate for the payment of debts, legacies, and expenses of administration, and not for the purpose of making partition or distribution among devisees. The court said: "The only question argued is whether by the words 'in the settlement of the estate' the testatrix meant not only the settlement of the administration account in the probate court, but also the partition or distribution of the estate among the devisees. The words 'settlement of the estate,' as commonly understood, and as used in the statute, * * * refer to the settlement of the probate account. * * * There is nothing in the will to show that the testatrix used the words in any other sense."

In the case of *In re. Creighton, Adm'r, etc.,* 12 Neb. 280, 11 N. W. 313, the words "settlement of estates of deceased persons" were held to refer to the adjustment of the claims and demands in favor of or against an estate, and to not necessarily

include the word "distribution," "which is the act of dividing or making an apportionment."

If appellant's contention was correct, James P. Pearce did not contemplate that there would be any settlement of his estate before the youngest of these two grandsons arrived at the age of 25 years. This could not have been true, for it will be borne in mind that Joe was under 10 years of age at the time the will was executed. The only son of testator, Marvin Pearce, was given one-half of the estate after payment of the debts and of certain legacies. Under appellant's contention the said Marvin Pearce would not be entitled to any portion of the estate until a settlement was had. It must be assumed that testator intended his son, Marvin Pearce, to come into the enjoyment of his portion— half of the estate—within a reasonable time after the will was probated; otherwise Marvin, being more advanced in years than the infant beneficiaries, might not live long enough to enjoy the bounty the father had amply provided for him. It is not to be supposed that testator entertained any unnatural wish or intention, in dealing with the interests of this son, in whom he had great confidence, and of the two infant grandsons, who he knew must be maintained and educated, one of whom lived with testator. If he did not have reference to the expiration of the statutory period of 12 months, or at least to the expiration of a reasonable time for the personal representative to reduce the personal assets to money and pay the debts and legacies, in order to determine or vest the share or interest of each distributee of the estate, it is difficult to conclude from the will what the testator did mean. From the general scheme of the will he must have contemplated a settlement that would vest absolutely the respective estates in the several beneficiaries for whom they were intended, long before the time contended for by appellant.

From the evidence before us, we are of opinion that the chancellor correctly decreed that the time of "settlement," as that term is used in item 5, did not refer to the final distribution, but to the expiration of a reasonable time in which to ascertain and settle testator's debts and provide for the payment of the specific legacies; and that when these things were done, in law and in fact, the several estates provided for in items 4 and 5 became not only vested, but absolute, in Marvin, Clovis, and Joe Pearce, as to the residue so disposed of by the testator.

It must be remarked that the respective estates of Joe and Clovis, in this residue of estate of testator, consisted of interests in real and personal property; and that there was no express direction by testator for the adding of the interest or income to the principal, if the estate was to be kept together for a long time, as that indicated in the will. However, it was the testator's intention that the estate should be held for accumulation; this is deducible from the whole will, and from its several specific provisions.—*Campbell v. Weakley,* 121 Ala. 64, 67, 69, 25 South. 694; Code, § 3410. This court has recently spoken of provisions in wills, offensive to the statutes against perpetuities, and to that creating trusts for accumulation only. In *Campbell v. Weakley, supra,* it was declared that it could not be supposed from the language employed that the testator intended to give his executors a larger estate than one for the period of ten years; that the estate was given them for accumulation for the benefit of his devisees and legatees, and that "beyond 10 years, under the statute, as he is presumed to have known, no estate created for such purposes could have any force or effect." In *Lyons v. Bradley,* 168 Ala. 505, 511, 512, 53 South. 244, 246, the common-law rule is pointed to, with its modification by statute (section 3417 of the Code), as follows: "While this statute in its provision for the case in which the successive donees are not the wife and children or children only of the donor lays down a rule more stringent than that formulated by the judges, in the case of a conveyance to wife and children, or children only, the power in the grantor of imposing future limitations may be exercised with greater freedom in respect to the remoteness of the limitations permitted, for it permits the alienation of estates to be suspended during a life or lives in being and during the minority of the issue of the surviving tenant for life, and, in default of issue coming of age during the minority of the devisee, over; but, so far as concerns the life or lives in being, it must be exercised in favor of a more restricted class of persons. It is to be noted that no period in gross of 21 years nor any number of years is provided to be added to the lives of wife and children. Strangely enough, we have in this state no statute controlling conveyances of personalty in respect to the creation of perpetuities. As to such conveyances the common law is still in force."

The estate dealt with by this will (which will was made and probate since the adoption of the Code of 1907) was composed of

personal and real property.  Thus it is tested by two rules as to perpetuities—that of the Alabama statutes as to real property, and that of the common law, as to the personalty.  The rule against perpetuities is that contingent interests must become vested in a life or lives in being at the date of the conveyance and 21 years thereafter, and to which, in case of infant in ventre sa mere, is added a sufficient time to cover the ordinary period of gestation.—*Pells v. Brown* (1620) ; Smith, Executory Interests, § 706; *Beard v. Westcott*, 5 Taun. 394; *Cadell v. Palmer*, 1 Clark & Finnelly's Case, 372; *The Duke of Norfolk's Case*, 3 Ch. Cas. 1; *Low v. Burron*, 3 P. Wms. 262; *Thellusson v. Woodford*, 4 Ves. 227.  The provision for minority was added to the rule, in a devise "to those of my grandchildren who reach 21," in *Stephens v. Stephens*; Cas. T. Talb. (Eng) 100.  See report of *Pells v. Brown*, Croke's Jones, 590.

(12) Therefore as Joe Pearce was less than 10 years old at the death of testator, the estate devised to him in real property did offend the statutory provision as to perpetuities—the lives being in being at the date of the conveyance (the date of the execution of the will) and 10 years thereafter—and vested in him absolutely on the death of the testator and the probate of said will.—Code 1907, § 3417; *Montgomery v. Wilson*, 189 Ala. 209, 66 South. 503, *Ashurst v. Ashurst*, 181 Ala. 401, 61 South. 942.  In *Lyons v. Bradley, supra*, 168 Ala. 514, 53 South. 244, applying the rule against perpetuities as to real estate, as fixed by the Alabama statute, our court laid it down that "all limitations" offensive thereto are to be regarded as "void ab initio;" and that a perpetuity will no more be tolerated when it is covered by a trust than when it displays itself, undisguised, in the settlement of a legal estate.—Perry on Trusts, § 383; *Lyons v. Bradley, supra*, 168 Ala. 516, 53 South. 244; *Ashurst v. Ashurst, supra*, 181 Ala. 407, 61 South. 942; *Montgomery v. Wilson, supra.*  We have no statutory prohibition of perpetuities as to personal property, except only that regulating trusts for accumulation merely (Code, § 3410), and, aside from said statute, devises are tested by the rule of the common law.

(13) What effect, then, had the provision of item 11, as to the payment to Joe of his portion of the residue of said personal estate?  It is obvious that the declared time of distribution or payment of Joe's said personal estate offended section 3410 of the Code, in that the trust sought to be created in said personalty

extended beyond Joe Pearce's attaining majority. The *Lyons Case,* 168 Ala. 524, 53 South. 244, on the authority of Prof. Gray (Perpetuities, 247, 418, etc.), declares the rule in such case to be that where the trust was not solely for the purpose of the remote gift over, in fact, had nothing to do with the gift over, it will be sustained pro tanto. The trust thus created, as to Joe Pearce's personal estate, was valid to his attaining majority, and not beyond that date.—*Lyons v. Bradley, supra,* 168 Ala. 525, 53 South. 244; *Ashurst v. Ashurst, supra,* 181 Ala. 407, 61 South. 942. No doubt this was the testator's intention.

(14, 15) When the jurisdiction of the court of equity attached, on the filing of the bill for the construction of the testamentary instrument in question and the removal of the administration into chancery (if such removal was effected), the infant defendants became wards of the court, and the protection and general welfare of their properties and persons passed under the court's supervision and direction. It follows that a trustee, acting for such wards of the court, is likewise subject to the orders of the court, notwithstanding the discretionary powers given under the instrument creating the trust. The court has supervision of the exercise of the discretionary powers by such trustee, to the end that the powers be honestly and reasonably, and not improvidently or arbitrarily, exercised, nor in disregard of the interests of such beneficiaries. To that end, a trustee or an executor, acting as such, may be required to report to the court, upon the exercise of his powers as affecting the personal control, or the property interests, of the ward.—*McDonald v. McDonald,* 92 Ala. 537, 544, 9 South. 195. Standing in loco parentis, and in the place of the creator of the trust, a court of equity will ratify or disapprove such acts of the trustee as, in its judgment, the testator or creator of the trust would have done for the beneficiary, if in life and cognizant of the facts made known to the court.—*Proctor v. Scharpff,* 80 Ala. 227; *Creamer v. Holbrook,* 99 Ala. 52, 11 South. 830; *Ward v. Ward,* 95 Ala. 331, 10 South. 832; *Dunham v. Milhous,* 70 Ala. 596; *McCarthy's Case,* 74 Ala. 546; *Lee v. Lee,* 55 Ala. 590; *Perkins v. Lewis,* 41 Ala. 649, 94 Am. Dec. 616; *Bennett v. Nashville Trust Co.,* 127 Tenn. 126, 135 S. W. 840, 46 L. R. A. (N. S.) 43, Ann. Cas. 1914A, 1045; 22 Cyc. 562 (2); 31 Cyc. 109 (2). Courts of equity will not favor a construction that confers upon or reposes in a trustee absolute and uncontrollable powers.—*Randolph v.*

*East Birmingham Land Co.,* 104 Ala. 355, 16 South. 126, 53 Am. St. Rep. 64; *McDonald v. McDonald, supra.* The question, what is a just and proper allowance to or for the beneficiary, from time to time, is therefore dependent on the circumstances and the necessary demands of the beneficiary, made known to the court of equity assuming jurisdiction of the estate and of the person of the ward or beneficiary.

(16) We are asked to declare whether the discretionary powers given the executor authorized him to continue to engage in the mercantile business as the testator had gone. There is no clause in the will conferring this specific authority. If such authority exists, it must be by way of inference from the general authority to sell or exchange lands, given in item 7, or that to "sell any property coming into his hands" as may appear to the best of the estate, provided in item 8, or that to exercise "every power granted" without report to or direction of the court provided in item 9. The latter item, however, shows that testator had in mind sales and exchanges of property, collections, and settlements of debts, in the process of "administering testator's estate, "as fully and completely as if he [executor] was the owner individually thereof."

(17) A trust is held not to be transmitted to an executor in such sort as to enable him to carry on a business, unless he has express authority by the will, or is so empowered to act by a court of chancery (*Steele v. Knox,* 10 Ala. 608) ; nor to conduct farming operations (*Hinson v. Williamson,* 74 Ala. 180, 196; *McAllister v. Allister,* 37 Ala. 484) ; nor to continue to employ slaves of an estate "in the business in which they were engaged at the time of intestate's death when, in so doing, he incurs expenses (*McCreeliss' Distributees v. Hinkle,* 17 Ala. 459, 465). Similarly, an administrator is without the right to engage in the business of a warehouseman.—*Griffin v. Bland,* 43 Ala. 542. In *Foxworth v. White,* 72 Ala. 224, the will authorized the estate to be kept together for a designated term of years. The court said: "The business or trade in which he may be employed is not, by operation of law, transmissible to his personal representative, except to a very narrow, limited extent; and a continuance of it by the representative is a breach of duty, from which only liability and loss to him can result. The testator may authorize its continuance; and if it is authorized, and the executor assumes to exercise the power, he renders himself personally liable for debts

[Pearce v. Pearce, et al.]

he may contract in the continuance of the business.—*Ex parte Garland*, 10 Vesey 119; *Morrow v. Morrow*, 2 Tenn. Ch. 549. Those with whom he deals cannot proceed directly against the estate of the testator. The estate is bound, however, to the indemnity of the executor for all debts and expenses properly incurred in the continuance of the business, when the continuance is in the exercise of a power conferred by the will, or under the authority of a court of competent jurisdiction. If he is not in default—if he is not, on a just settlement of his accounts, indebted to the estate; if the debts incurred by him are in truth advances properly made by him in the prudent exercise of the power—the creditors dealing with him have an equity to be subrogated to his right of indemnity from the trust estate.—*Steele v. Steele*. 64 Ala. 438 [38 Am. Rep. 15], and authorities cited."

In *Eufaula National Bank v. Manassas. Ex'r. etc.*. 124 Ala. 379, 27 South. 258. the testatrix at the time of her death was engaged in the mercantile business. The will created a trust the main object of which was the maintenance and education of testatrix's minor children and a division of the property between them. The discretionary power given the executor was thus defined:

"I hereby authorize and empower him if in the performance of his trust it becomes in his judgment necessary or expedient to sell at public or private sale in such manner as he shall deem best for the interest of my said two sons. any part or all of the estate which shall come to his hands and to invest and to reinvest the proceeds at his discretion."

The court said: "The continuance of the mercantile business is nowhere mentioned in the will. Such a business it is true involves the sale of goods and the reinvestment in other goods, but it also involves obligations, expenditures, and a degree of attention beyond mere selling and reinvesting. Debts incurred in an authorized business of a trustee may become chargeable against the trust estate and so endanger its existence. No intention to subject the estate to the uncertain results of a mercantile business is either expressed or implied in this will."

The general rule of these cases is that neither an executor nor can administrator is justified in continuing the estate in the trade or business enterprise engaged in by the testator or the decedent at the time of his death, for the reason that such trades or enterprises are a hazardous use to permit of trust moneys,

and that such trading or business lies outside of the general scope of administrative functions. This position is well fortified by authorities from other jurisdictions and by established text-writers.—*Willis v. Sharp,* 113 N. Y. 586, 21 N. E. 705, 4 L. R. A. 493; *Lucht v. Behrens,* 28 Ohio St. 231, 22 Am. Rep. 378; *Campbell v. Faxon,* 73 Kan. 675, 85 Pac. 760, 5 L. R. A. (N. S.) 1002; Williams on Ex'rs (7th Ed.) 791; Schouler's Ex'rs and Adm'rs, § 325; 11 Am. & Eng. Ency. Law 974. There may be cases where a personal representative will be permitted to carry out contracts made by the decedent or testator, or to complete the manufacture of articles commenced by him and left unfinished at his death, or, within a reasonable time limit, to make purchases and incur liabilities, where such a course is deemed to the best interest of the estate.—*Harding v. Evans,* 3 Port. 221, 29 Am. Dec. 255; *Cornwell v. Deck,* 2 Redf. (N. Y.) 88; *In re. Benedict,* 13 Abb. N. C. (N. Y.) 67; *Gilman v. Wilbur,* 1 Dem. Sur. (N. Y.) 516; *Pitts v. Jameson,* 15 Barb. (N. Y.) 310; *Newton v. Poole,* 12 Leigh (Va.) 112; *Garrett v. Noble,* 6 Sim. 504; *Collinson v. Lister,* 20 Beav. 356; *Bowker's Estate,* 12 Phila. (Pa.) 88; Id. 35 Leg. Int. (Pa.) 192. That the discretionary power conferred by the will did not clothe testator's executor with the authority to continue a general mercantile business, such as testator was engaged in at his death, finds support in the provisions of the statute providing for keeping estates together, continuing plantations, employing laborers, etc.—Code 1907, § 2743 et seq.

The right of an executor or administrator to compensation is declared by statute (section 2690 of the Code). It is through such commissions, on all receipts and all disbursements by him, as to the court having jurisdiction of the final settlement appear to be a fair compensation for his trouble, risk, and responsibility, "not to exceed 2½ per cent." thereon; and the court may allow "actual expenses," and for special or extra services "such compensation as is just. In the instant case the testator has fixed his executor's compensation at the highest rate allowed by the statute, to-wit, 2½ per cent. on all receipts and all disbursements. The chancellor has correctly interpreted this item of the will.

It results from what we have said that the decree of the chancellor must be affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.