CITY BANK & TRUST CO. v. McCAA. et al.
(7 Div. 573.)

(Supreme Court of Alabama. June 11, 1925. Rehearing Denied Oct. 22, 1925.)

1. Wills ⬦487(1) — Unambiguous language controls.

Language of will, when unambiguous, must control, and no extrinsic evidence is admissible to show meaning different from, or contradictory of, that imported by words, clearly and definitely expressing testator's intention, however awkwardly.

2. Wills ⬦527—Clear and unambiguous will held not capable of construction as excluding legatee from participation in residuary estate.

Will clearly and unambiguously giving incompetent son of testator the interest on certain sum for life, and directing that entire residue, after payment of legacies, be distributed equally among all his children and descendants of any deceased child per stirpes, held not subject to construction as excluding such son from participation in residuary estate.

3. Wills ⬦707(2)—Attorneys' fees for services, inuring to benefit of certain beneficiaries only, cannot be allowed from estate.

Attorneys' fees can be allowed from estate only when services are for benefit of entire estate, as distinguished from services rendered for, and inuring only to, benefit of one or more beneficiaries, who must pay for such services from their parts of estate.

Appeal from Circuit Court, Calhoun County; R. B. Carr, Judge.

Bill in equity by the City Bank & Trust Company, as guardian of the estate of William Noble, against W. L. McCaa and the First National Bank of Anniston, as executors of the will of John H. Noble, deceased. From a decree sustaining demurrer to the bill, complainant appeals. Affirmed.

Willett & Willett, of Anniston, for appellant.

Counsel argue that the non compos mentis son should not under a proper interpretation of the will, be held to participate in the residuary estate, and cite Steele v. Crute, 208 Ala. 2, 93 So. 694; Lamb v. Jordan, 223 Mass. 335, 123 N. E. 782; Metcalf v. Framington Parish, 128 Mass. 374. The phase of the bill seeking the allowance of attorney's fee to be taxed against the estate of the testator was not subject to demurrer. Coker v. Coker, 208 Ala. 239, 94 So. 308; Code 1923, § 6261.

Knox, Acker, Sterne & Liles, of Anniston, for appellees.

The intent and purpose of the testator must govern in the construction of a will, and, when the terms of the will are unambiguous, there is no room for construction, and evidence of extrinsic facts is not admissible to

control or vary the terms of the will. Baker v. Baker, 182 Ala. 194, 62 So. 284; De Bardelaben v. Dickson, 166 Ala. 59, 51 So. 986; Lee v. Shivers, 70 Ala. 292; Steele v. Crute, 208 Ala. 2, 93 So. 694; Duncan v. De Yampert, 182 Ala. 528, 62 So. 673; 40 Cyc. 1380. The allowance of attorney's fees can be made only when the services are for the benefit of the entire estate. Bidwell v. Johnson, 191 Ala. 195, 67 So. 985; Wilks v. Wilks, 176 Ala. 151, 57 So. 776; Graham v. Graham, 207 Ala. 648, 93 So. 660; Coker v. Coker, 208 Ala. 239, 94 So. 308; De Ramus v. De Ramus, 205 Ala. 219, 87 So. 354; Blount County Bank v. Kay, 209 Ala. 74, 95 So. 297; Ex parte McLendon, 212 Ala. 403, 102 So. 696. The gift of a legacy does not bar the legatee from participating in the residue. Jones v. Gane, 205 Mass. 37, 91 N. E. 129; Johnson v. Goss, 132 Mass. 274; Arcularius v. Sweet, 25 Barb. (N. Y.) 403.

THOMAS, J. The bill was for removal of administration to the court of equity for construction of a will. It is averred, among other things:

John H. Noble died on November 29, 1923, leaving a last will and testament, which was duly admitted to probate. In this will the appellees, W. L. McCaa and the First National Bank of Anniston, were named executors, qualified as such, and they administered the estate.

The testator left surviving him the following legatees and devisees: Philip Noble, Duncan Noble, Gladys Noble, William Noble (grandson of testator), John H. Noble (non compos mentis), and Cornelia Faulk, all children of the testator except William Noble, grandson of testator, being the son of the deceased son of John H. Noble, and the appellant in this cause is the guardian for the grandson.

The appellant filed the original bill on July 30, 1924, on behalf of its ward, and had the administration removed from the probate court to the circuit court, in equity, at the same time upon properly verified petition by decree of date August 5, 1924. On August 15 and September 5, 1924, appellees and respondents filed their answers to the original bill, in which they admitted that the appellant was entitled to the relief asked on behalf of its ward.

Then on September 6, 1924, the appellant filed its amendment to the original bill asking that John H. Noble, Jr., the non compos mentis son of the testator for whom a trust fund of $25,000 was provided in section 2 of said last will and testament, be not allowed to share at all in the residuary estate, disposed of in the sixth section of the will, which reads as follows:

"I direct that the residue of my estate shall be distributed equally among my children and the descendant or descendants of any child or children that may be dead, such distribution to be per stirpes and not per capita."

Appellant requested in this amendment that it be allowed attorneys' fee against the estate of John H. Noble, deceased, for services rendered in the administration of the trust fund, and for the removal of the administration of the estate from the probate court to the circuit court, in equity.

The appellees filed their demurrer to the amendment, setting out as grounds thereof that the construction of the will prayed for by appellant was in violation of the express letter of the will which included all of the children of the testator to share in the residuary estate of the testator, regardless of the fact that this $25,000 trust fund was provided by the testator for the "maintenance, support, and comfort" of his son John H. Noble, and set out as ground of demurrer to the amended bill asking for attorneys' fee that the services rendered by attorneys for the appellant did not inure to the common benefit of the estate or of the trust fund.

The second paragraph of Mr. Noble's will directs his executors to pay the proceeds of the designated life insurance policies, aggregating $25,000, to the First National Bank of Anniston, Ala., to be held by it in trust for the testator's "son, John H. Noble, Jr., during the term of his natural life," and that the proceeds of said policies are to "be invested by the said bank in United States Liberty bonds, and the net income from the same shall be used and paid over by said bank for the maintenance, support and comfort" of the said John H. Noble, Jr., "during his life and at his death the said fund remaining shall revert to my estate."

The third paragraph makes provision for certain indebtedness, etc.

The fourth paragraph required the executors to pay over to the First National Bank of Anniston the sum of $5,000 to be held by said bank in trust for William Noble, Jr., the grandson of testator and the ward of the appellant, provided that it shall be invested in Liberty bonds, and when the ward reaches the age of 16 years the bank is authorized to use a reasonable sum thereof for his education, and when he reaches the age of 21 years the funds remaining in the hands of the trustee are required to be paid over to him. In case of his death before he reaches the age of 21, the fund reverts to the estate, and "shall be distributed as directed for the residue of my estate."

Two other special legacies are made; namely, the payment of the mortgage on a dwelling in Jacksonville, Fla., and $5,000 to testator's grandson, Harrison J. Faulk, Jr. This grandchild died before the testator, and the codicil recites said death, and the last-named legacy was revoked on account of the death of the said legatee.

The original bill charged that the execu-

tors were denying that the appellant's ward was entitled to any participation in the residuary estate, and prayed for removal of the administration into the circuit court, in equity, that the will might be construed so as to hold that the appellant's ward was entitled to participation in the residuary estate. The executors answered, denying the allegation that they refused to recognize the right of appellant's ward to a part of the residuary estate, and admitted that said ward was entitled to share equally with the children of the testator in the residuary estate, and that the rights of the ward, as defined by the will of Mr. Noble, were clear, specific, and beyond question. The executors made no objection to the removal of the administration of the estate in the court of equity.

Thereupon the complainant amended its bill, asking for a construction of the will so to exclude John H. Noble, Jr., a child, from participating in the residuary estate, and asking that it be allowed attorneys' fees. The demurrer to the bill as amended was sustained, and the appeal is taken from said decree.

The language of the will is clear and unambiguous. It is its own interpreter. In section 2 is given to John H. Noble, Jr., the interest on $25,000 for life. The residuary clause we have set out directs that all of the residue of the estate, after paying the legacies provided for, shall be distributed equally among all of his children and the descendants of any deceased child, per stirpes.

[1] This court in numerous cases has declared that it is the universal rule that the language of the will, when unambiguous, must control. Goodwyn v. Cassels, 207 Ala. 482, 93 So. 405; Ralls v. Johnson, 200 Ala. 178, 75 So. 926; Henderson v. Henderson, 210 Ala. 73, 97 So. 353; Crawford v. Carlisle, 206 Ala. 379, 89 So. 565; Pearce v. Pearce, 199 Ala. 491, 74 So. 952; Jemison v. Brasher, 202 Ala. 578, 81 So. 80.

In Steele v. Crute, 208 Ala. 2, 93 So. 694, cited by the appellant, it is said:

"The testator's intention, if legal, is the law of the instrument, and must be gathered from its four corners, having due regard for his manifest scheme, to ascertain its spirit as well as its letter, and if possible to make it form 'one consistent whole' where the general and primary interest will prevail over a special or secondary interest that may appear to be to the contrary. If, however, the instrument or any provision therein is ambiguous, and it is believed by the court to be necessary to put itself as far as possible in the position of the testator, this may be done by taking into consideration the surrounding circumstances at the time testator made his will."

See Fowlkes v. Clay, 205 Ala. 523, 88 So. 651.

"It is, of course, true that the intent and purpose of the testator must govern, and this must be derived from a consideration of the will in all its parts. But it is also true that among the rules of interpretation of wills firmly established by our Supreme Court are that, when the terms of a will are unambiguous, there is no room for construction; that the words used therein must be taken in their primary sense; that to depart from this primary or ordinary sense requires clear demonstration, apparent from the will itself, of the enlarged meaning, and that we may not infer the intention of the testator merely from our impressions as to what it would have been natural for the testator to do. Russell v. Russell, 84 Ala. 48, 3 So. 900; De Bardelaben v. Dickson, 166 Ala. 59, 51 So. 986; McGuire v. Westmoreland, 36 Ala. 594; Continental Life v. Webb, 54 Ala. 688; Phinizy v. Foster, 90 Ala. 262, 7 So. 836." Baker v. Baker, 182 Ala. 194, 62 So. 284.

That is to say:

"The court cannot infer, from any impression of its own, as to what would be natural to do; but there must be something in the context of the will to show that the testator did not understand the meaning of the word, or use it in a sense different from its correct meaning." De Bardelaben v. Dickson, 166 Ala. 59, 62, 51 So. 986, 987.

In Lee v. Shivers, 70 Ala. 292, Mr. Justice Somerville wrote:

"The usual rule excludes the allowance of such evidence [evidence of extrinsic facts] for the purpose of controlling or varying the terms of the will, except to explain a latent ambiguity, or to rebut a resulting trust. * * * But we take it as indisputable law that, if the words of a will, in which the testator has sought to express his intention, are clear, and have a definite meaning, however awkwardly expressed, no extrinsic evidence is admissible to show a different meaning, contradictory of that imported by the testamentary language. Parol evidence, in other words, is never admissible, to obtain a construction of a will which is not warranted by, or will defeat, its express terms. 1 Greenl. Ev. § 290; 1 Story's Eq. Jur. § 181; Avery v. Chappel [6 Conn. 270], 6 [16] Am. Dec. 53."

And the importance of the rule demands adherence thereto. 1 Jarman on Wills (Big. 5th Ed.) 409, 410. See, also, Duncan v. De Yampert, 182 Ala. 528, 62 So. 673; Henderson v. Henderson, 210 Ala. 73, 97 So. 353; Fowlkes v. Clay, 205 Ala. 523, 88 So. 651, to the same effect.

[2] The residuary clause embraced and provided for all of testator's children and the descendants of his children standing in the place of the deceased parent. None were excluded. All were included, the same as if each had been named—his five children and the grandchild representing per stirpes his deceased father. In the language of Duncan v. De Yampert, 182 Ala. 528, 534, 62 So. 673, possibly the testator took no thought of the precise situation, contingency, or superabundance of moneys or properties devised and bequeathed for and to the unfortunate son as pointed out in the bill as amended.

"At any rate, the language used made no provision for it. And we are not to proceed upon conjecture, but on the words of the will. We cannot reject or add to the legal meaning of the words used unless it is clear upon the whole that to do so would give effect to the testator's intention." Duncan v. De Yampert, 182 Ala. 528, 534, 62. So. 673, 675.

To repeat, the testator, in unmistakable language, makes specific provision for, or gives certain sums of money or certain properties to, said ward and to his said unfortunate son. Thereafter in the will he directs the disposition of the residue of his estate, as we have indicated above, in plain and unambiguous language, not open to construction. We cannot set aside this positive direction of the testator and substitute for him a different will.

The will construed in Lamb v. Jordan, 233 Mass. 335, 123 N. E. 782, is different from the testamentary document before us. The will of Mr. McKie in that case contained the provisions:

"Second. To my grandson William H. Rome, Jr. five hundred dollars *upon the expressed condition that he shall not contest this will. If he does contest then he takes nothing.* Third. To my granddaughter, Ethel B. Rome, five hundred dollars upon the expressed condition that she does not contest this will. If she does contest then she takes nothing. Fourth. To Robert F. Jordan and Millie W. McKie in trust for my grandchildren, sons of my deceased son Eldred E. McKie, a sum equal to the amount that my said son would have received had he been living at the time of my death, the income or whatever part thereof that said trustees shall deem necessary, to be paid said children in equal part, and said principal to be paid to the said children as they arrive at the age of thirty-five. In the event of either of them dying before reaching said age, and not having married, then his part shall go to the survivor. Fifth. All the rest, residue and remainder of all my estate, real, personal and mixed, I give, devise and bequeath to my children share and share alike, the children of my deceased children to take by right of representation, subject to the conditions heretofore set forth." (Italics supplied.)

The first reason assigned by the court in that case is as follows:

"The Rome grandchildren are excluded from sharing in the residue for two reasons: (1) In the first place the natural inference from the form of words used in clauses second and third is that the legacy given in each of these clauses is the complete expression of the design of the testator for the benefit of these legatees. When a testator makes a gift to one of his next of kin on the express condition that he shall receive nothing if he publishes his disappointment by making contest as to the validity of the will, that usually is a full and consummated statement of testamentary purpose. That is the impression conveyed by the words used in clauses second and third. * * *"

The second provision of Mr. Noble's will is:

"I direct and it is my will that the two policies of insurance in the Equitable Life Assurance Society of United States No. 2,636,292 for $15,000.00 and No. 2,636,990 for $10,000.00 when collected, be paid over to my executors to the First National Bank of Anniston, Alabama to be held by said bank in trust for my son John H. Noble, Jr. during the term of his natural life. I direct that the proceeds of said policies be invested by the said bank in United States Liberty bonds, and the net income from the same shall be used and paid over by said bank for the maintenance, support and comfort of my said son John H. Noble, Jr. during his life and at his death the said fund remaining shall revert to my estate and be distributed as provided for the residue of my estate."

The fourth item of the will is:

"I direct and it is my will that my executors pay over to the First National Bank of Anniston the sum of $5,000.00 to be held by said bank in trust and to be invested in U. S. Liberty bonds, for the use and benefit of my grandson William Noble, Jr. the interest accruing on said bonds shall be invested by said bank from time to time, and when my grandson shall have reached the age of 16 years, said bank is authorized to expend from said fund such sum as may reasonably [be] necessary to defray the expenses of the education of my said grandson, not to exceed the sum of $500.00 per annum. When my said grandson shall have reached the age of 21 years, the balance of said fund accrued interest, then held by said bank, shall be paid over to him. In case of his death before the age of 21 years, the said fund then remaining in the hands of the bank shall be distributed as directed for the residue of my estate."

And the residuary clause is:

"I direct that the residue of my estate shall be distributed equally among my children and the descendant and descendants of any child or children that may be dead, such distribution to be per stirpes and not per capita."

This is very different from the provisions of Mr. McKie's will, construed by the Massachusetts court. In the latter, the legacies to the two grandchildren (the Romes) were "upon the expressed condition that he [or she] shall not contest this will." No such significant words are used by Mr. Noble. The residuary clause in the McKie will provided for distribution among testator's children, share and share alike, the children of deceased children of testator to take by right of representation, "subject to the conditions heretofore set forth," as we have above indicated. No such limitation is contained in the residuary clause of Mr. Noble's will. See, also, the case of Arcularius v. Sweet, 25 Barb. (N. Y.) 403, which supports the view we have announced.

We may further observe that a comparison of items 2 and 4 of Mr. Noble's will would suggest that the construction contended for by appellant's counsel would appear to militate against appellant's ward and debar him from participating in the residue of the estate; that is to say, if it be held that the trust created for John H. Noble, Jr., debars

him from participating in the residue, the same result would obtain as to the trust created for William Noble, Jr., in the fourth item of the will. There is great similarity for the two trusts for the benefit of said child and grandchild. Whatever the force of the last observation may be, we adhere to the view announced that said beneficiary participated in the residue of said estate under item 6 of Mr. Noble's will.

[3] The prayer of the amended bill, in the matter of attorneys' fees, is specific. The original and the amended bills show the purpose thereof. The allowance of attorneys' fees can be made only when the services are for the benefit of the entire estate, as distinguished from services that are rendered for, and inure only to, the benefit of one or more beneficiaries. Such beneficiary must sustain the burden of such services and make compensation therefor out of his part of the estate. Wilks v. Wilks, 176 Ala. 151, 57 So. 776; Bidwell v. Johnson, 191 Ala. 195, 67 So. 985; De Ramus v. De Ramus, 205 Ala. 219, 221, 87 So. 354; Graham v. Graham, 207 Ala. 648, 93 So. 660; Coker v. Coker, 208 Ala. 239, 94 So. 308; Blount County Bank v. Kay, 209 Ala. 74, 95 So. 297; Ex parte McLendon, 212 Ala. 403, 102 So. 696.

The demurrer to the amended bill was properly sustained. The decree of the circuit court, in equity, is affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and BOULDIN, JJ., concur.